

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-2-2002

# USA v. Campbell

Precedential or Non-Precedential: Precedential

Docket No. 00-1698

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Campbell" (2002). *2002 Decisions.* Paper 369.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/369

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed July 2, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-1698

UNITED STATES OF AMERICA

v.

CURTIS LEROY CAMPBELL,

        Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania

District Judge: Donald E. Ziegler
(D.C. Crim. No. 00-00001-1)

Argued January 30, 2001

Before: SLOVITER, FUENTES and ALDISERT,
Circuit Judges.

(Filed July 2, 2002)

        Shelly Stark
        Lisa B. Freeland (ARGUED)
        Office of the Federal Public Defender
        Pittsburgh, Pennsylvania 15222
        Attorneys for Appellant

        Harry Litman
        Bonnie R. Schlueter (ARGUED)
        United States Attorneys' Office
        Pittsburgh, Pennsylvania 15219
        Attorneys for Appellee

OPINION OF THE COURT

FUENTES, Circuit Judge:

Curtis Leroy Campbell was indicted for distributing in
excess of 50 grams of cocaine base ("crack") in violation of
21 U.S.C. SS 841(a)(1) and (b)(1)(A)(iii). At trial, the District
Court instructed the jury as to the drug offense but did not
submit the issue of drug quantity to the jury as an element
to be proven beyond a reasonable doubt. After a guilty
verdict, the court sentenced Campbell to 22 years of
imprisonment and 5 years of supervised release. He
appeals, contending that in light of Apprendi v. New Jersey,
530 U.S. 466, 120 S. Ct. 2348 (2000), his sentence was
unconstitutional because the issue of drug quantity, which

resulted in a sentence beyond the statutory maximum authorized by the jury's verdict, had not been submitted to the jury and proven beyond a reasonable doubt. We conclude that, because the evidence at trial supported a conviction under 21 U.S.C. S 841(b)(1)(B)(iii), which provides for a 5 to 40 year sentence for distribution of at least 5 grams of cocaine base, Campbell's sentence, although in violation of Apprendi, did not constitute plain error. We will therefore affirm.

I.

In November 1997, Rick Szurlej, a local officer who served as a Special Agent for the United States Drug Enforcement Agency ("DEA"), purchased a small amount of crack cocaine from Kenneth Cottingham. After his arrest, Cottingham agreed to cooperate by assisting in the investigation of other drug activities in the West End and McKees Rocks areas of Pittsburgh, Pennsylvania. During a debriefing, Cottingham named Campbell as one of his drug sources.

On January 11, 1999, as part of the DEA's ongoing investigation and under Szurlej's supervision, Cottingham arranged a controlled purchase from Campbell. By telephone, Cottingham scheduled a meeting with Campbell

2

to purchase two ounces of crack cocaine for $2,000. Approximately a half hour later that day, and under DEA surveillance, Cottingham entered Campbell's vehicle. Once inside, Cottingham handed Campbell $2,000, and Campbell supplied crack cocaine in return. After Campbell dropped Cottingham off, the DEA seized the crack cocaine, which was weighed and delivered to the DEA laboratory in New York.

At trial, the Government first called Cottingham, who testified regarding the crack cocaine he purchased from Campbell. The next witness was Szurlej, who testified that he outfitted Cottingham with a digital recorder, picked him up after the controlled purchase, and promptly seized the drugs.

During Szurlej's direct testimony, the prosecutor stated, "I believe, Your Honor, we have a stipulation as to the chemical analysis." Counsel then conferred off the record and, when questioning resumed, Szurlej testified that the chemical analysis determined that the drugs seized were cocaine base, commonly known as crack cocaine. When questioned about the weight, Szurlej responded that it was 53.2 grams with a purity level of 41%. After Szurlej, the DEA forensic chemist, Chris Anne Eleftheriou, testified that she performed the chemical analysis, which revealed that the drugs weighed 53.2 grams and had a cocaine base purity of 41 percent. She testified that the remaining 59 percent of the substance contained unidentified cutting agents, processing impurities, and other by-products.

Campbell's counsel asked her whether the substance might have absorbed atmospheric moisture and thereby gained weight. Eleftheriou thought this possibility was unlikely.

Three other DEA agents, Richard Nolan, Daniel Snyder, and Dominick Braccio, also testified about their surveillance of the controlled purchase operation and identified Campbell as present at that operation. Before his cross-examination of Braccio, Campbell's trial counsel asked the court about "the effect of the stipulation that the sample was cocaine." He said that "a little bit of an issue came up as to the weight, and I'm not sure to what extent I am bound by the stipulation I gave and to what extent I can comment on whether we have a doubt here as to

3

whether we're at 50 grams or not." Campbell's attorney sought guidance about whether, in light of the stipulation, he remained free to contest drug quantity, and specifically whether the evidence showed an amount equal to or exceeding 50 grams. During the ensuing colloquy, the prosecutor took the position that drug quantity was not an element of the offense and therefore was not subject to a jury determination. The prosecutor stated that the jury did not "have to find as an element that it's over 50 grams. That's not an issue for them to decide." The court agreed, stating that "[i]t is not an issue to be argued at this time."

After the conclusion of testimony and closing arguments, the court instructed the jury that, in order to convict Campbell, it must find, beyond a reasonable doubt, that he "acted knowingly and willfully" and that he "possessed with the intent to distribute and/or distributed cocaine base." The District Court did not submit the drug quantity issue to the jury. Instead, the court told the jury that the seized drugs were crack cocaine, which were "analyzed and found to be 41 per cent pure and weighed 53.2 grams." Thereafter, the jury found Campbell guilty.

The Presentence Investigation Report ("PSR") stated that Campbell had dealt with over 1.5 kilograms of cocaine, which required an offense level of 38. The PSR also assigned Campbell a criminal history category of II based, in part, upon information provided by confidential informants who indicated that some of Campbell's drug dealing occurred while he was on probation. Consequently, Campbell's guideline sentencing range was 262 to 327 months.

During a sentencing hearing in May 2000, the District Court questioned the Government concerning the amount of controlled substance attributable to Campbell. The Government explained that the amount purchased on the date alleged in the indictment was 53.2 grams. Further, the Government stated that 1.5 kilograms of crack cocaine could be attributed to Campbell based upon his own pre-arrest statements to DEA agents and a "conservative approach in doing the math." The court then admitted

Campbell's statements into the record. The Government also emphasized that Campbell had been involved with

about 500 grams and 1.5 kilograms of crack cocaine in relation to two different individuals, and that confidential informants had confirmed that Campbell had dealt in those quantities of drugs. Finally, the Government pointed to a tape recording showing that Campbell had been prepared to deal in 1 kilogram of crack cocaine.

Campbell's counsel stated that he had objections to the PSR. The court declared a 10-minute recess to give him an opportunity to confer with Campbell concerning those objections. After the recess, defense counsel stated that "my client [has] advised me that he specifically contests paragraphs 10 through 19 inclusive," which included "each and every one of the paragraphs setting forth allegations of relevant conduct." Campbell also "contest[ed] the allegation that he made the alleged confession to the agents." However, counsel provided no further detail concerning the grounds for the objections. Notably, Campbell did not object to paragraph 9 of the PSR, which implicated him in the sale of 53.2 grams of cocaine base to Cottingham for $2,000.

The court proceeded to adopt the PSR findings, stating that "we find that the clear weight of the credible evidence of record supports the finding of the probation officer [in the PSR], especially the admissions of Mr. Campbell to the . . . drug enforcement task force member." The court also adopted the PSR guideline findings regarding offense level and criminal history category. Consequently, the court sentenced Campbell to 22 years of imprisonment, or 264 months.

Campbell filed a timely appeal to this Court. We have jurisdiction under 18 U.S.C. S 3742 and 28 U.S.C. S 1291.

II.

Campbell contends that, in light of Apprendi, his case should be remanded for resentencing. He asserts that, because the drug quantity he sold to Cottingham was not submitted to the jury and proven beyond a reasonable doubt, a sentence in excess of the 20 years authorized by 21 U.S.C. S 841(b)(1)(C), which applies in the absence of a specific drug quantity, is erroneous.

A.

The Government initially argues that Campbell waived the Apprendi issue because he had stipulated that the confiscated drugs were 53.2 grams of crack cocaine, and therefore, he can no longer contest the drug quantity issue.

Recognizing the importance of this issue, we asked counsel to direct us to that portion of the record where the stipulation as to cocaine base quantity is set forth. In its response, the Government wrote that "[t]here was no written stipulation between the parties," but added that, according to its trial counsel, there was an off-the-record discussion agreeing to stipulate to the weight and type of drug.1 Campbell's appellate counsel responded that the Government's representation was incorrect. She stated that Campbell's trial counsel advised her that "he does not believe he agreed to stipulate that the drugs weighed more than 50 grams" because such a stipulation would not have been in Campbell's best interest.2

Under these circumstances, we cannot conclude that there was a stipulation on the drug quantity attributable to Campbell. Certainly, the Government did not place a stipulation on the record. Indeed, its questioning of witnesses regarding the weight of the drugs suggests that it believed drug quantity still to be at issue. Further, Campbell's attorney expressly challenged the Government's witnesses at trial regarding drug quantity and asked permission from the District Court to argue to the jury that reasonable doubt existed on this issue. The court, however, relying on our then-controlling precedent,3 prevented him from doing so. On this record, Campbell did not intentionally relinquish or abandon a known right. See United States v. Olano, 507 U.S. 725, 733 (1993).

---

1. Letter from Bonnie R. Schlueter, Assistant U.S. Attorney for the Western District of Pennsylvania, to Marcia M. Waldron, Clerk of the Court, 12/14/00, at 1.

2. Letter from Lisa B. Freeland, Assistant Federal Public Defender, to Marcia M. Waldron, Clerk of the Court, 12/15/00, at 2.

3. Before Apprendi, the quantity of drugs in a S 841 conviction was merely a sentencing factor to be determined by the court, not an element of the offense subject to a jury finding. See United States v. Vazquez, No. 99-3845, 2001 WL 1188250, at *3 (3d Cir. Oct. 9, 2001) (en banc).

6

B.

Campbell argues that, because the District Court did not submit drug quantity to the jury to be proven beyond a reasonable doubt, the jury merely found that he had distributed, or possessed with the intent to distribute, cocaine base. He submits that the only penalty authorized by the jury's verdict, therefore, is the one set forth in the only penalty provision of S 841 that contains no reference to drug quantity, 21 U.S.C. S 841(b)(1)(C). That section authorizes a maximum sentence of no more than 20 years imprisonment. Campbell maintains that, because the 22-year sentence imposed upon him exceeds the statutory maximum by two years but was not based upon a jury finding as to drug quantity, his sentence must be vacated

and remanded for a new sentencing hearing.

In Apprendi, the Supreme Court held that"[o]ther than
the fact of a prior conviction, any fact that increases the
penalty for a crime beyond the prescribed statutory
maximum must be submitted to a jury, and proved beyond
a reasonable doubt." 530 U.S. at 490. The Court further
stated that it " 'is unconstitutional for a legislature to
remove from the jury the assessment of facts that increase
the prescribed range of penalties to which a criminal
defendant is exposed. It is equally clear that such facts
must be established by proof beyond a reasonable doubt.' "
Id. (quoting Jones v. United States, 526 U.S. 227, 252-53
(1999) (Stevens, J., concurring)). Under this regime, the
"prescribed statutory maximum" is the punishment that the
defendant faces under the facts found by the jury. See id.
at 482-83, 490; United States v. Nordby, 225 F.3d 1053,
1059 (9th Cir. 2000).

Here, the District Court did not submit drug quantity to
the jury to be proven beyond a reasonable doubt. Under
these circumstances, the only penalty authorized by the
jury's guilty verdict is the one set forth in 21 U.S.C.
S 841(b)(1)(C), which (with one exception not relevant here)
criminalizes conduct involving cocaine base without
reference to drug quantity. As the Tenth Circuit has stated,
"[a] district court may not impose a sentence in excess of
the maximum set forth in 21 U.S.C. S 841(b)(1)(C) unless
the benchmark quantity of cocaine base for an enhanced

7

penalty is alleged in the indictment in addition to being
submitted to the jury and proven beyond a reasonable
doubt." United States v. Jones, 235 F.3d 1231, 1236 (10th
Cir. 2000); see also United States v. Vazquez , No. 99-3845,
2001 WL 1188250, *3 (3d Cir. Oct. 9, 2001) (en banc).
Under this "catch-all" or "default" provision, the maximum
penalty for a defendant without a prior felony drug
conviction is 20 years. See Vazquez, 2001 WL 1188250, at
*3. Because Campbell received a sentence in excess of the
maximum authorized penalty based upon the District
Court's finding of drug quantity, which was made under the
less demanding preponderance of the evidence standard,
the District Court violated the constitutional rule set forth
in Apprendi.

C.

Both parties agree that, since Campbell did not object to
the District Court's failure to submit the drug quantity
issue to the jury, we should evaluate this constitutional
violation under the plain error standard of Fed. R. Crim. P.
52(b). See, e.g., Nordby, 225 F.3d at 1060. Under the plain
error standard, "before an appellate court can correct an
error not raised at trial, there must be (1) error, (2) that is
plain, and (3) that affect[s] substantial rights. If all three
conditions are met, an appellate court may then exercise its
discretion to notice a forfeited error, but only if (4) the error

seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Johnson v. United States, 520 U.S. 461, 466-67 (1997) (internal quotations and citations omitted); accord Olano, 507 U.S. at 732-36.

The Government concedes that if its waiver argument is unsuccessful, then for purposes of Rule 52(b) an error occurred that was plain. For the reasons explained above, we reject the Government's waiver argument and agree that Campbell has satisfied the first two plain error factors.

The more difficult question relates to the third factor -- the substantial rights inquiry. With respect to that factor, we rely on Vazquez, where we held that a defendant, whose sentence violated Apprendi because drug quantity was not submitted for a jury determination, cannot satisfy the

8

substantial rights prong of the plain error test if the evidence conclusively establishes a drug quantity adequate to support the erroneous sentence. See Vazquez , 2001 WL 1188250, at *8. Under this standard, Campbell cannot show that the Apprendi violation in his case affected his substantial rights. The evidence at trial established indisputably, and certainly beyond a reasonable doubt, that Campbell distributed in excess of 5 grams of cocaine base. For instance, Cottingham testified that Campbell sold him crack cocaine in a controlled purchase. DEA Special Agent Szurlej confirmed that he had worked with Cottingham to arrange this controlled purchase, which occurred under his surveillance. Three other DEA agents, Nolan, Snyder, and Braccio, also testified about their surveillance of Cottingham's controlled purchase from Campbell. Szurlej testified that, after leaving Campbell's vehicle, Cottingham was immediately picked up and the drugs he purchased from Campbell for $2,000 were seized. DEA forensic chemist Eleftheriou testified that she had performed the chemical analysis, which showed that the drugs were cocaine base and weighed 53.2 grams. Szurlej further testified that the drugs were in the form of crack cocaine. Though Campbell's attorney sought to establish doubt as to whether the crack cocaine equaled or exceeded 50 grams, there was no dispute that the crack cocaine weighed at least 5 grams.

Distribution of 5 or more, but less than 50, grams of cocaine base constitutes a violation of 21 U.S.C. S 841(b)(1)(B)(iii), which carries a statutory maximum penalty of 40 years. Because the indisputable facts established that Campbell sold more than 5 grams of cocaine base, we rely upon the statutory maximum in that section, which encompasses the 22 years he actually received, to conclude that Campbell's substantial rights were not affected. See id. Further, Campbell's sentence would not change because the 1.5 kilograms of crack cocaine that the District Court attributed to him under the sentencing guidelines' relevant conduct provision would continue to apply.4 See id.  The result is that Campbell

4. For a more detailed analysis of the relevant conduct determination, see infra Part III.C.

9

would continue to face the same guideline sentencing range of 262 to 327 months that authorized the 264 month (22 year) sentence imposed.

Even if Campbell could satisfy the third plain error factor, the Apprendi error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. On this point, we again rely on Vazquez, where we held that the defendant did not satisfy the fourth plain error factor, even though his sentence violated Apprendi because drug quantity was not submitted to the jury, where the evidence overwhelmingly demonstrated that he had been involved with a drug quantity sufficient to support his erroneous sentence. See id. at *10. We find further support in the recently decided Supreme Court case of United States v. Cotton, 122 S.Ct. 1781 (2002), in which the Court held that the omission from a federal indictment of drug quantity, a fact that enhanced the defendants' statutory maximum sentence, did not seriously affect the fairness, integrity, or public reputation of judicial proceedings where the evidence of the drug quantity was "overwhelming" and "essentially uncontroverted." Id. at 1786.

In this case, we think it clear that the evidence we recited above, in the context of the third plain error factor, constitutes "overwhelming" and "essentially uncontroverted" evidence that Campbell distributed in excess of 5 grams of cocaine base. Accordingly, we hold that, while Campbell's sentence violated Apprendi, the error did not affect his substantial rights or the fairness, integrity, or public reputation of judicial proceedings, and, thus, we will uphold his 22-year sentence.

III.

Campbell also argues that the District Court committed several errors at sentencing when considering his relevant conduct. He asserts that each of these alleged errors greatly affected the length of his prison sentence and therefore provide an independent basis for vacating his sentence. We dispose of these alleged errors in turn.

10

A.

Campbell contends that the District Court violated Fed. R. Crim. P. 32(c)(1) by failing to resolve his objections to the PSR's findings. Rule 32(c)(1) requires that, with respect to each disputed matter, the court "must make either a

finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." Regarding this requirement, we have previously stated that "[a] finding on a disputed fact or a disclaimer of reliance upon a disputed fact must be expressly made." United States v. Electrodyne Systems Corp., 147 F.3d 250, 255 (3d Cir. 1998).

At the sentencing hearing, Campbell's counsel informed the District Court that his client contested the factual findings of the PSR. The court responded, "That is not going to be enough. Out of fairness to the government, the government has to know the specific challenges of the defendant with regard to the factual assertions." After conferring with his client, counsel stated that Campbell specifically objected to paragraphs 10-19 of the PSR. These paragraphs described Campbell's relevant conduct to the offense, based on information obtained from government informants as well as from statements Campbell made to law enforcement officials. The court acknowledged these objections, but held that "the clear weight of the credible evidence of record supports the finding of the probation officer, especially the admissions of Mr. Campbell to the . . . [DEA]."

Campbell has not shown a violation of Rule 32. That Rule provides that a party must communicate in writing to the probation officer "any objections to any material information . . . contained in or omitted from the presentence report" within 14 days after receiving the PSR. Fed. R. Crim. P. 32(b)(6)(B). Here, Campbell first raised his objections to the PSR at the sentencing hearing, but did not explain why he chose to wait until the hearing to do so. Of course, the court may allow new objections to be raised at any time before imposing sentence if good cause is shown. See Fed. R. Crim. P. 32(b)(6)(D). However, even assuming that Campbell properly raised his objections, the District

11

Court fulfilled its obligations under Rule 32(c)(1) by stating that the PSR's findings were supported by a preponderance of the evidence.

B.

Campbell next argues that the District Court violated his due process rights by considering statements he made to DEA agents without first establishing the reliability of those statements. Generally, the Federal Rules of Evidence do not apply in sentencing proceedings, as even hearsay may be used by the court when considering relevant conduct. See United States v. Paulino, 996 F.2d 1541, 1547-48 (3d Cir. 1993).5 However, the Sentencing Guidelines provide that all information used as a basis for sentencing must have "sufficient indicia of reliability to support its probable accuracy." U.S. Sentencing Guidelines Manual  S 6A1.3(a) (1998) [hereinafter U.S.S.G.]. We have stated that this

standard "should be applied rigorously." United States v. Miele, 989 F.3d 659, 664 (3d Cir. 1993).

In the case at hand, Campbell did not provide any detailed reasons to support his claim that the PSR's findings were unreliable, even after the court granted a 10-minute recess to allow defense counsel to confer with Campbell regarding his objections to the PSR. As a result, there was no evidence contradicting the PSR's findings that would have called into question the reliability of Campbell's prior statements. Thus, this case is distinguishable from Miele, where we held that there were no sufficient indicia of reliability for the district court to have based its finding of drug quantity on the testimony of an informant, who was a known drug addict, but only after it was clear that he had given inconsistent statements on the amounts of drugs involved in a conspiracy. See 989 F.2d at 662-65.

Campbell contends that once he objected to the PSR's findings, the District Court should have considered whether the statements he made to the DEA were voluntary and reliable. In other words, Campbell argues that his general

_____

5. We note one exception; the rules with respect to privileges are, in fact, applicable to sentencing proceedings. Fed.R.Evid. 1101(d)(3).

12

objection to the PSR required the court to make a determination on the statements' voluntariness and reliability before making any findings regarding sentencing based on the statements. The Government responds that the objection Campbell made at the sentencing hearing was that he had never made the statements. Thus, the Government argues, the District Court was not required to consider, on its own initiative, the question of whether the statements were voluntary.

In the absence of any evidence that casts doubt on the statements' voluntariness or reliability, we agree that the court did not need to make a further inquiry into those factors to fulfill U.S.S.G. S 6A1.3. The cases that Campbell cites in his reply brief, which required a hearing on voluntariness, are not apt here because they did not concern the use of information at the sentencing phase. Therefore, we conclude that the District Court did not violate Campbell's due process rights when considering Campbell's statements at sentencing.

C.

Finally, Campbell submits that the District Court clearly erred in determining that 1.5 kilograms of crack cocaine could be attributed to him and considered as part of his relevant conduct. The Sentencing Guidelines provide that "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In

making this determination, the court may consider, for example, . . . similar transactions in controlled substances by the defendant." U.S.S.G. S 2D1.1, cmt. n.12. Thus, we have recognized that "in calculating the amount of drugs involved in a particular operation, a degree of estimation is sometimes necessary." Paulino, 996 F.2d at 1545. Nevertheless, the court "must carefully scrutinize the government's proof to ensure that its estimates are supported by a preponderance of the evidence." Id.

At Campbell's sentencing, the court questioned the Government's lawyer on its calculation. The Government described that its calculation was based on the statements

13

Campbell had made. Specifically, Campbell had stated that he regularly obtained crack from Chris Motley, a/k/a"C Mott," in quarter ounce, half ounce, and one ounce amounts from approximately January 1992 to 1995. The largest amount Campbell received from Motley was four and one half ounces. Using "a conservative approach in doing the math," the Government stated that Campbell's transactions with Motley involved approximately 1.5 kilograms of crack cocaine. In addition, Campbell had stated that he dealt with Darrel Boxley, a/k/a "Biddy," in one, two, or three ounces of crack cocaine every 10 days for a period of a year. Again using a conservative calculation, the Government stated that this would have totaled around half a kilogram. Thus, the Government proffered that Campbell dealt with at least 1.5 kilograms of crack cocaine.

We cannot hold that the District Court clearly erred in adopting the Government's findings on the amount of drugs attributable to Campbell. First, as we noted earlier, Campbell did not present any evidence that would have contradicted his earlier statements to law enforcement officials. Moreover, statements from informants corroborated that Campbell dealt in these amounts. Finally, the Government also stated that it had a tape recording of Campbell proposing the sale of a kilogram of crack cocaine. Thus, we conclude that the District Court did not err in finding that 1.5 kilograms of crack cocaine could be attributed to Campbell.

IV.

Accordingly, for the reasons explained above, we will affirm the District Court's sentence.

14

SLOVITER, Circuit Judge, concurring.

This court held in United States v. Vazquez, 271 F.3d 93 (2001), a closely divided en banc decision, that the defendant's sentence following his conviction for drug conspiracy was not plain error despite the failure to submit

the issue of drug quantity to the jury. I wrote for the
dissent that the error affected defendant's substantial
rights, relying on the decision in Apprendi v. New Jersey.
The Supreme Court has now unanimously rejected that
view in United States v. Cotton, 122 S. Ct. 1781 (2002).
Therefore, I join the opinion of the majority.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

15