

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-23-2008

# USA v. O'Garro

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-5055

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. O'Garro" (2008). *2008 Decisions.* Paper 1148.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1148

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-5055
_____

UNITED STATES OF AMERICA,

v.

ANTOINE O'GARRO,

Appellant.

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 03-cr-0372-2)
District Judge: Honorable Sylvia H. Rambo

_____

Argued
April 15, 2008

Before:  SLOVITER, JORDAN, and ALARCON*, *Circuit Judges.*

Filed: May 23, 2008

_____

John F. Yaninek   [ARGUED]
Mette, Evans & Woodside
3401 N. Front Street
P. O. Box 5950
Harrisburg, PA 17110-0950
        *Counsel for Appellant*

_____

    *Honorable Arthur L. Alarcon, Senior Judge, United States Court of Appeals for the
Ninth Circuit, sitting by designation.

Daryl F. Bloom   [ARGUED]
James T. Clancy
Office of United States Attorney
228 Walnut Street
P.O. Box 11754
Harrisburg, PA   17108-0000
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Antoine O'Garro appeals the District Court's order sentencing him to 86 months imprisonment for violating 18 U.S.C. § 922(g), which prohibits convicted felons from possessing firearms.  O'Garro contends that the District Court erred in calculating his sentence by applying a four-level enhancement to his base offense level pursuant to U.S.S.G. § 2K2.1(b)(5).[1]  We will affirm.

I.      *Background*

Because we write primarily for the benefit of the parties, we set forth only those facts pertinent to the issues before us on appeal.  On December 17, 2003, a grand jury

_____

[1]  The District Court used the 2005 version of the Sentencing Guidelines in calculating O'Garro's sentence.  Subsequent amendments to the Sentencing Guidelines renumbered U.S.S.G. § 2K2.(1)(b)(5) to § 2K2.1(b)(6), but did not change its text.  We will refer to the Guidelines provision at issue as § 2K2.1(b)(5) throughout this opinion.  The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.  We exercise plenary review over a district court's interpretation of the Sentencing Guidelines, and we review a district court's factual findings at a sentencing hearing for clear error.  *United States v. Brennan*, 326 F.3d 176, 200 (3d Cir. 2003).

2

indicted O'Garro for violating 18 U.S.C. § 922(g). The indictment stemmed from a traffic stop that took place on June 25, 2002, when a police officer saw O'Garro, who was driving a dark colored minivan, driving the wrong direction on a one-way street. After obtaining O'Garro's driver's license, the officer ran a record check that revealed an outstanding warrant for O'Garro's arrest based on an altercation with his girlfriend that had taken place nineteen days earlier, on June 6, 2002. The police placed O'Garro under arrest, and, while searching O'Garro's vehicle incident to the arrest, recovered a blue backpack containing a loaded, silver .357 caliber handgun.

On July 18, 2006, pursuant to a plea agreement, O'Garro pled guilty to the charge of violating 18 U.S.C. § 922(g). In the Pre Sentence Investigation Report ("PSR"), the probation officer recommended a four-level increase in O'Garro's base offense level, pursuant to U.S.S.G. § 2K2.1(b)(5), which provides that "[i]f the defendant used or possessed any firearm ... in connection with another felony offense ... increase [the defendant's base offense level] by 4 levels." The probation officer recommended the enhancement because he concluded that O'Garro had earlier used the handgun recovered during the traffic stop to threaten his girlfriend during the altercation on June 6, 2002.

According to the PSR, on June 6, 2002, O'Garro's then-girlfriend, Kimberly Costley, called the police and told them that, earlier that day, she and O'Garro had argued over the use of her car, and that, when she threatened to call the police, O'Garro had told her that he would "blast her in the face." (PSR at ¶ 3.) Costley told police that O'Garro

3

then left, returning later with a silver handgun. According to Costley, O'Garrro attempted to enter her apartment with the gun, but could only open the door part of the way because she had latched the door's safety chain. Costley told the police that O'Garro pointed the gun at her and her five-year-old son through the gap in the door, and told her that he would "send her to an early grave." *Id.* According to Costley, O'Garro then kicked the door in, took a blue backpack from the apartment, and left in a dark colored minivan. As a result of that incident, O'Garro pled guilty to state charges of simple assault and terroristic threatening.

In this case, O'Garro objected to the four-level increase suggested in the PSR and renewed that objection at his sentencing hearing. Although he objected generally to what he called the probation officer's characterization of the facts surrounding the June 6 altercation, O'Garro did not point to any specific inaccuracies in the PSR's account of the assault on Ms. Costley and her son.

At sentencing, O'Garro argued that § 2K2.1(b)(5) should not apply because, under § 1B1.3, the June 6 assault did not qualify as conduct which was related to the unlawful possession of a firearm, the charge to which he had pled guilty. According to O'Garro, the two incidents were not related because there was no evidence showing that the firearm seized on June 25 was the same firearm he had allegedly used to threaten Costley on June 6. In response, the government argued that the same gun found in O'Garro's posession on June 25 was used by O'Garro to threaten Costley on June 6. The

4

government noted that the gun found on June 25, a silver revolver, matched Costley's description of the gun she said O'Garro had pointed at her and her son on June 6. The District Court then noted that Costley's description of the vehicle in which O'Garro drove away on June 6 matched the van involved in the June 25 traffic stop, and that the gun the police recovered on June 25 was found inside a bag that matched the description Costley gave of the bag O'Garro had taken from her apartment on June 6. The District Court then went on to overrule O'Garro's objection, adopt the PSR, and apply the four-level enhancement under § 2K2.1(b)(5), sentencing O'Garro to 86 months imprisonment. O'Garro then timely filed this appeal.

II.     *Discussion*

Both O'Garro and the government acknowledge our recent decision in *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007), in which we held that "[t]here can be no question, in light of the holding of *Booker* and the reasoning of *Apprendi*, that the right to proof beyond a reasonable doubt does not apply to facts relevant to enhancements under an advisory Guidelines regime." *Id.* at 565. Instead, such facts may be found by a judge by a preponderance of the evidence without offending the Fifth or Sixth Amendments. *Id.* at 568.

However, notwithstanding *Grier*, O'Garro argues that the government was not entitled to rely solely on the facts in the PSR to show by a preponderance of the evidence that he used the same firearm he possessed on June 25 to threaten Costley on June 6.

5

Instead, he contends, the District Court should have held an evidentiary hearing at which Costley should have been called to testify, or alternatively, the government should have been required to present a certified record of his state conviction that resulted from the June 6 altercation. According to O'Garro, without such a hearing, the government failed to show any connection between the alleged June 6 assault on Costley and the June 25 traffic stop, and therefore, the District Court violated his due process rights by sentencing him for conduct which was collateral to the charge to which he pled guilty. O'Garro also suggests that the June 6 assault cannot support the application of the enhancement under § 2K2.1(b)(5) because it does not qualify as "relevant conduct" to his felon-in-possession offense under U.S.S.G. § 1B1.3.

The government responds that, under our decision in *United States v. Robinson*, 482 F.3d 244 (3d Cir. 2007), hearsay is admissible at a sentencing proceeding, and that the similarities recorded in the PSR regarding the gun, the backpack, and the minivan were enough to allow the District Court to conclude, by a preponderance of the evidence, that O'Garro possessed the same gun on June 6 and June 25.

At oral argument, counsel for O'Garro did not go so far as to concede that those similarities necessarily supported the District Court's finding that he possessed the same gun on June 6 and June 25. However, he did admit that "there are facts in the PSR that support that the gun was the same gun." (Oral Arg. Recording at 11:50-12:03.) While we recognize that O'Garro has not conceded the point, we agree with the government

6

that, assuming the District Court could rely solely on the PSR, the facts contained in that document support by a preponderance of the evidence the conclusion that O'Garro possessed the same gun on June 6 and June 25.[2]  Thus, the only remaining issue before us is whether the District Court could rely solely on the PSR, without requiring the government to present additional evidence.[3]

---

[2]  We note in passing that two of our sister circuits have concluded that the government need not show that a defendant used the same gun that is the basis for the unlawful possession charge under § 922(g) to commit the separate felony offense that grounds the enhancement under U.S.S.G. § 2K2.1(b)(5).  *See United States v. Mann*, 315 F.3d 1054, 1056 (8th Cir. 2003) (stating that § 2K2.1(b)(5) "applies to *any* firearm and not merely the particular firearm upon which the defendant's [§ 922] conviction is based") (emphasis in original); *accord* United *States v. Jardine*, 364 F.3d 1200, 1208 (10th Cir. 2004) (interpreting the meaning of "any firearm" under § 2K2.1(c)(1)) (judgment vacated on other grounds by *Jardine v. United States*, 543 U.S. 1102 (2005)). Another Circuit has concluded that, if there are separate weapons, there at least must be a "clear connection" between those weapons before § 2K2.1(b)(5) can apply.  *United States v. Howse*, 478 F.3d 729, 733 (6th Cir. 2007).  However, because the government in this case has accepted the burden of showing that O'Garro used the same firearm on June 6 and on June 25, we need not decide whether § 2K2.1(b)(5) can be applied when different firearms are used in the separate offenses to which that Guidelines section looks.

[3]  On the facts of this case, the resolution of O'Garro's argument that the June 6 assault was not "relevant conduct" to his June 25 felon-in-possession offense under U.S.S.G. § 1B1.3 also ultimately turns on whether the District Court was entitled to rely solely on the facts in the PSR.  Section 1B1.3 provides that a defendant's base offense level:

    (a)     shall be determined on the basis of the following:

    (1)    (A)    acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant and ... that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

Assuming *arguendo* that, before § 2K2.1(b)(5) can apply, § 1B1.3 requires the government to show that the June 6 assault qualifies as "relevant conduct" to the June 25

7

Our conclusion is that the District Court's reliance on the PSR was appropriate. In *Robinson*, we held that "the Confrontation Clause does not apply in the sentencing context and does not prevent the introduction of hearsay testimony at a sentencing hearing." 482 F.3d at 24 (citation omitted). Thus, while the government's case for applying § 2K2.1(b)(5) would certainly have been stronger had Costley testified at sentencing, the District Court was free to rely on the unrebutted account of events set forth in the PSR. The hearsay statements of the police officers who spoke to Costley about the June 6 assault may not be the most persuasive presentation of the facts, but, in this case, they are sufficient.

Significantly, and despite his request for an evidentiary hearing, O'Garro has never, either in the District Court or on appeal, explained how the facts contained in the PSR are inaccurate. We have held that a district court may rely on disputed statements in a PSR if the defendant is unable to provide "detailed reasons" which "call into question the reliability of [the speaker's] statements." *United States v. Campbell*, 295 F.3d 398, 406 (3d Cir. 2002). In *Campbell*, the defendant's PSR included his pre-arrest statements

---

felon-in-possession offense, proof that O'Garro possessed the same gun during both incidents satisfies that requirement. "[P]ossession of a firearm is a continuous offense which ceases only when the possession stops." *United States v. Jackson*, 479 F.3d 485, 491 (7th Cir. 2007). Because firearms possession is a continuing offense, if O'Garro possessed the same firearm on June 6 and June 25, then it follows that he very likely continuously possessed the firearm from June 6 to June 25. That continuous possession renders his conduct on June 6 "an act ... committed ... during the commission of the offense of conviction," as required by § 1B1.3.

to undercover officers that he had sold 1.5 kilos of cocaine. *Id.* at 402. The defendant objected to the District Court's reliance on this portion of the PSR, and asserted that he had not made incriminating statements to the agents, but provided no evidence beyond this bare assertion that the PSR was incorrect. *Id.* at 406. The District Court adopted the PSR, including the incriminating statements. *Id.* The defendant appealed, arguing that the District Court should have held an evidentiary hearing to determine whether he had made the statements, and, if he had, whether the statements were made voluntarily. *Id.* We affirmed, explaining that the defendant had failed to present "evidence contradicting the PSR's findings which would have called into question the reliability of [his] prior statements." *Id.*

Here, as did the defendant in *Campbell*, O'Garro objects to the factual account in the PSR, but he fails to give any reason to believe that it is inaccurate, let alone "detailed reasons." *Campbell*, 295 F.3d at 406. We see no reason to require district courts to hold evidentiary hearings when a defendant does nothing to call into question the accuracy of the evidence presented.[4]

---

[4]Our dissenting colleague states that "there is no basis for the enhancement in this case[,]" but that assumes the conclusion of her argument that the government failed to carry its burden. Her conclusion follows only if one accepts the premise that the evidence in the PSR was inadmissible, a premise the dissent acknowledges is suspect by disclaiming the proposition that PSRs are generally inadmissible. Our precedent is clear: hearsay may indeed be admitted at the sentencing stage of a case, *Robinson*, 482 F.3d at 246, and nothing in Shepard v. United States, 544 U.S. 13 (2005) changes that rule, which is itself based on long-standing Supreme Court authority. *See Williams v. Oklahoma*, 358 U.S. 576, 584 (1959) ("[O]nce the guilt of the accused has been properly established, the

9

*III.    Conclusion*

For the foregoing reasons, we will affirm the District Court's judgment of sentence.

SLOVITER, Circuit Judge, dissenting.

The District Court may not have been unreasonable in inferring that the silver revolver found in defendant O'Garro's possession on June 25, 2002, was the same revolver that O'Garro used on June 6, 2002, when he terrorized his girlfriend.  After all, it was found in a bag that matched the description that the girlfriend provided to the police.  However, in the criminal justice system we put the burden on the prosecutor to prove every element of its case.  In this case, the government accepted the burden of showing that O'Garro used the same firearm on June 6 and on June 25.  See Maj. Op. at note 2.

---

sentencing judge, in determining the kind and extent of punishment to be imposed, is not restricted to evidence derived from the examination and cross-examination of witnesses in open court but may, consistently with the Due Process Clause of the Fourteenth Amendment, consider responsible unsworn or 'out-of-court' information relative to the circumstances of the crime and to the convicted person's life and characteristics.") Likewise, it is clear that district courts may rely on facts set forth in a PSR. *Campbell*, 295 F.3d at 406.  Since a district court may rely on such facts, it stands to reason that the government can ask the court to do so and can rely on those facts as evidence from which to argue its sentencing position.  Whether there is a more persuasive way to proceed is not the point. Our colleague's position is, in essence, that the statements of the police, which in turn incorporate  the victim's statements, amount to nothing – hence the assertion that "[t]he government produced no witness ... ."  We cannot agree.  The statements of the police and, by incorporation the victim's, are evidence upon which the District Court was entitled to rely, absent some reason to believe that they could not be responsibly dealt with so.  O'Garro provided no such reason.

10

How did the government meet its burden?  It didn't.  The government produced no witness, not even O'Garro's girlfriend (probably now ex-girlfriend) who was the person who presumably gave the local police the description of the gun.  Hearsay is acceptable in sentencing proceedings, but no member of the local police testified.  The District Court drew its inference that O'Garro used the same weapon from the Pre-Sentence Report ("PSR") which relied on the police reports containing O'Garro's girlfriend's description of the June 6 event.  The majority sees no problem with this double hearsay.  I do.

In United States v. Leekins, 493 F.3d 143 (3d Cir. 2007), we considered the effect of Shepard v. United States, 544 U.S. 13 (2005), on the decision of that district court admitting a police report into evidence.  In Shepard, the Supreme Court had considered what evidence could be used to determine whether an earlier guilty plea qualified as a predicate conviction for purposes of the Armed Career Criminal Act ("ACCA").  The Shepard plurality held that for purposes of the ACCA, the sentencing court could not look to the police report but was limited to the charging documents, the written plea agreement, the transcript of the plea colloquy, and any explicit factual findings by the trial court to which the defendant assented.  The issue before us here differs but the Court's concern about the reliability of police reports is equally at issue.

In Leekins, we agreed with counsel that "a mere police report is not inherently reliable."  493 F.3d at 149 (citation and internal quotations omitted).  We added, "[o]n the other hand, a police report also is not inherently unreliable."  Id.  We looked instead to the

11

indicia of reliability of the police report in that case. We noted that there was testimony that Leekins had a weapon on the day at issue and that the sentencing court had the benefit of observing the witness who provided that testimony. There was corroborating evidence of the holster in the car, and there were verbatim statements by two police officers attached to the police report. There are no comparable indicia in this case to corroborate the sentencing judge's inference that the silver revolver used on June 6 was the same as the silver revolver found in O'Garro's automobile on June 25.

I do not profess to know anything about handguns, silver or otherwise, but counsel stated at oral argument that silver handguns are in common use. I note with concern that the government made no effort to prove its position that the weapons were the same. It relied exclusively on the PSR – the easy way out. I do not suggest that the PSR is inadmissible in all cases but when it relies on hearsay from local officers who have not even given their own statements as the basis for an enhancement that considerably increases defendant's time of imprisonment, we should require more. I believe appellate courts have an obligation to hold the government, with its vast resources in criminal cases, to its proof, particularly when the defendant objected to that specific portion of the PSR.

The majority rewrites this dissent by stating, in its note 4, that my position is that the statements of the police, which incorporate the victim's statements, amount to nothing. Quite the contrary. The majority states, "The statements of the police and, by

12

incorporation the victim's, are <u>evidence</u> upon which the District Court was entitled to rely . . . ." (emphasis added). Indeed, they would be. The problem in this case is that they were not put into evidence. There was no attempt by the government to produce the police report or a statement by the police, much less testimony by one of the police officers who could testify to what the girlfriend said. Nor did the government produce the girlfriend. It produced only the PSR which includes purported statements by unidentified police officers. I, unlike the majority, am not prepared to give the government yet another free ride. Because there is no evidentiary basis for the enhancement in this case, I respectfully dissent.