NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1088
_____

UNITED STATES OF AMERICA

v.

WILLIAM WILKERSON, a/k/a Tony Patterson

William Wilkerson,
                              Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 10-cr-00153-1)
District Judge: Honorable R. Barclay Surrick

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 6, 2011

Before: HARDIMAN, BARRY, and VAN ANTWERPEN, *Circuit Judges*.

(Filed: December 07, 2011)

_____

OPINION OF THE COURT

_____

VAN ANTWERPEN, *Circuit Judge*.

Appellant William Wilkerson pled guilty to possession of a firearm following a

felony conviction, in violation of  18 U.S.C. § 922(g)(1), and was sentenced to 54 months

of incarceration.  Wilkerson appeals this sentence on two grounds.  First, he asserts that

the District Court violated Rule 32(i)(1)(A) of the Federal Rules of Criminal Procedure by failing to verify that Wilkerson had read the presentence report ("PSR"). This error warrants a remand for resentencing, Wilkerson argues, because it denied him an effective opportunity to dispute a prior conviction that the District Court relied upon in imposing sentence. Second, Wilkerson asserts—and the Government agrees—that an alcohol-related provision in the written terms for supervised release is not reasonably related to his offense or personal history. For the reasons that follow, we will affirm the sentence of incarceration and remand for the limited purpose of striking the alcohol-related provision.

## I.

Because we write solely for the parties, we recount the facts and proceedings only to the extent required for resolution of this appeal. On July 5, 2009, Wilkerson was arrested after Philadelphia police received a radio call that a man attending a block party had a firearm. When Officers Keith White and Matthew Blaszczyk arrived on the scene, they overheard Wilkerson tell a woman that he intended to shoot an unspecified individual. When the officers confronted Wilkerson, a foot chase ensued, and ended with Wilkerson apparently pulling a revolver from his pocket and attempting to fire it at Officer White. Since there were no bullets remaining in the gun, no shot was ultimately fired.

On March 16, 2010, a grand jury issued a one-count indictment charging Wilkerson with possession of a firearm by a convicted felon, to which Wilkerson pled

guilty on September 24, 2010. The Commonwealth of Pennsylvania has also charged

Wilkerson for his actions, including a felony charge of aggravated assault.[1]

After Wilkerson entered his guilty plea, the U.S. Probation Office prepared a

PSR in which it determined that the total offense level was twenty-one—twenty points

for the base offense, a three-point reduction for acceptance of responsibility, and a four-

point enhancement for possessing the firearm in connection with another felony offense.

Wilkerson was also determined to have a Category III criminal history, based on his five

criminal history points. Three of Wilkerson's criminal history points were for a prior

robbery conviction and two were for the fact that the instant offense occurred while

Wilkerson was on probation. Based on Wilkerson's total offense level and criminal

history, the recommended incarceration range under the Guidelines was 46 to 57 months.

In addition to the prior robbery conviction, the PSR listed two prior convictions

from North Carolina, one for possession of drug paraphernalia and one for carrying a

concealed weapon. The convictions, which arose from two different arrests when

Wilkerson was seventeen years old, are listed in the PSR as having been consolidated

with each resulting in a guilty plea. While the PSR provides details regarding the drug

paraphernalia charge, it notes that "[a]ccording to the U.S. Probation Office in the

Eastern District of North Carolina, the details of the [concealed weapon] offense are

unavailable." PSR ¶ 30.

---

[1] Wilkerson is currently awaiting trial on the state charges.

After a draft copy of the PSR was sent to the parties, Wilkerson's attorney sent a letter to the probation officer objecting to the four-point enhancement on the grounds that Wilkerson did not attempt to fire his gun during the arrest. Wilkerson's attorney also noted that, due to Wilkerson being transferred to an out-of-state facility, he had "not been able to go over the draft of the presentence report with [Wilkerson]," and did not know "if [Wilkerson] will have further objections to the report." A. 38.

At the sentencing hearing, the District Court did not ask Wilkerson whether he had personally read the PSR. The closest the District Court came to doing so was asking if Wilkerson's attorney "ha[d] an objection to that report?"[2] A. 52. Wilkerson's attorney responded by reiterating his objection to the four-point enhancement.[3]

Later, during Wilkerson's allocution, the District Court asked him the following question: "Why would you have a gun? You were convicted of carrying a concealed weapon when you were 17. You were involved in robberies that put you in jail for a total

---

[2] The District Court's full inquiry was as follows: "You have received the Pre-sentence Investigation Report. I believe, Mr. Wilson, you have an objection to that report?" A. 52.

[3] To resolve defense counsel's objection, Officers White and Blaszczyk, as well as Wilkerson himself, took the stand to testify about the events on the night of the arrest. After hearing this testimony, and argument from counsel, the District Court concluded that the Government had met its burden of proving by a preponderance of the evidence that Wilkerson had attempted to shoot Officer White, and accordingly, that the four-point enhancement was justified.

of ten years and there was a weapon involved in at least one of those. Why in God's name would you go out on 4th of July—with a gun?"[4]  A. 112.

After Wilkerson finished his allocution, the District Court discussed the two key factors that justified the sentence.  One factor was the serious nature of the offense.  Having heard testimony from two police officers about Wilkerson's attempt to fire the gun at Officer White, the District Court described the facts and circumstances of the offense as "very, very serious."  A. 116.  A second factor was Wilkerson's personal history.  As the District Court made clear, the "most concerning aspect" of Wilkerson's history was his 53 acts of misconduct while imprisoned on a prior robbery conviction—an "unusual situation" that resulted in Wilkerson serving out the full ten years of a five-to-ten year sentence.  *Id*.  The District Court also referenced Wilkerson's prior robbery offense, which involved a weapon, as well as his "prior conviction for carrying a concealed weapon."  *Id*.

After the District Court referenced the concealed weapon conviction,  Wilkerson interjected: "Not to interrupt, sir, but the prior offense for carrying a concealed weapon . . . I was never convicted for that, anything of that nature.  I was never arrested.  It must be

---

[4] Wilkerson responded to the District Court by stating, first, that he had lied in his earlier testimony when he had admitted an intent to shoot somebody that night.  Wilkerson stated that the reason he lied is because he thought the Government "wanted to hear something bad about me."  A. 113.  Wilkerson then insisted that the real reason he had a gun that night was because he wanted to ensure that no one got hurt.  Specifically, Wilkerson described seeing a young man place the gun in an alleyway.  To protect others who may have been injured by the gun, Wilkerson picked it up and placed it in his pocket.

an error on here. I was -- I was arrested for a controlled substance, yes, in North Carolina, but not for a weapon." *Id.* After the District Court briefly noted that Wilkerson's testimony was at odds with the PSR, the probation officer described the basis for including the conviction. The officer stated that she had "requested a collateral response from the District of North Carolina" and was informed "that [Wilkerson] was arrested on April 16th of 1996 for carrying a concealed weapon in the Cumberland District Court of Fayetteville, North Carolina. On May 7th of 1996, he pled guilty and this was consolidated for judgment with the drug conviction." A. 117.

After hearing the probation officer's explanation, Wilkerson asked the court whether the concealed weapon conviction was "supposed to be for the same time of . . . being arrested for the controlled substance?" *Id.* The District Court briefly explained to Wilkerson that "[i]t was consolidated with [the drug offense] for disposition." *Id.* Neither Wilkerson nor his attorney pressed the issue further, and the District Court proceeded to impose a sentence of 54 months.

Following the hearing, the District Court issued a written sentence which contained a term not disclosed during the sentencing hearing. The term provided that, upon release from incarceration, Wilkerson must refrain from alcohol consumption, submit to testing to ensure compliance, and participate in an alcohol treatment program for the duration of his supervised release. While Wilkerson had informed the probation officer that he often drank on a daily basis, he did not disclose any problems related to

6

alcohol use, and the probation officer had not recommended any alcohol-related conditions as part of Wilkerson's supervised release.

## II.[5]

Where, as here, the defendant has not raised an issue below, we review for plain error under Rule 52(b) of the Federal Rules of Criminal Procedure. *United States v. Stevens*, 223 F.3d 239, 242 (3d Cir. 2000). Under the plain error standard of review, the error must be "obvious" and must have "affect[ed] substantial rights." *United States v. Olano*, 507 U.S. 725, 734 (1993). An error affects substantial rights if the defendant can prove that it "affected the outcome of the district court proceedings." *Id*. When the alleged error, as here, involves a violation of Rule 32(i)(1)(A), we have previously indicated that the defendant will meet his burden if he can show a "reasonable likelihood that the sentence would have been different" in the absence of the error. *Stevens*, 223 F.3d at 244. If a defendant is able to make this showing, this Court "has authority to order correction, but is not required to do so." *Olano*, 507 U.S. at 734. A court of appeals "should exercise its discretion to order such a correction only if the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Stevens*, 223 F.3d at 242 (quoting *Olano*, 507 U.S. at 732).

## III.

We begin our analysis by addressing Wilkerson's argument that we should remand for resentencing because of the District Court's failure to verify that he had read the PSR.

---

[5] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under both 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

While we agree that the District Court erred by failing to determine that Wilkerson read the PSR, we will affirm the sentence of incarceration because Wilkerson has not met his burden of proving that substantial rights were affected.

We start by addressing whether a clear error occurred. Rule 32(i)(1)(A) provides that a sentencing court "must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report." Fed R. Crim. Proc. 32(i)(1)(A). While we have held that this rule does not create an "absolute requirement that the court personally ask the defendant" whether he read the PSR, we have made clear that a sentencing court must "somehow determine that the defendant has had this opportunity." *United States v. Mays*, 798 F.2d 78, 80 (3d Cir. 1986). A sentencing court fails to discharge this obligation if it merely asks the defendant's attorney if the attorney has any objections to the PSR. *Stevens*, 223 F.3d at 242. Since that is precisely what the District Court did here, the District Court committed an error, and the error was "plain"[6]—as the Government itself acknowledges.[7]

We next turn to the issue of prejudice. Wilkerson makes two arguments to support his assertion that the District Court's error prejudiced his rights. Wilkerson argues that

---

[6] In *Stevens*, the court asked: "Are there any requests for additions or corrections to the presentence?" 223 F.3d at 242. Here, the District Court asked Wilkerson's attorney whether "[y]ou've any objections to that report?" A. 52.

[7] The Government concedes that the District Court committed an error. In its brief, the Government writes: "[T]he district court erred in not adequately verifying that the defendant had read and discussed the PSR, and given the settled law on this issue, the error was plain." Gov't Br. at 21.

8

we should presume prejudice just as we do for violations of the right to allocution, because there was an opportunity for the violation to affect the outcome. In the alternative, Wilkerson argues that the record is sufficient to demonstrate a reasonable likelihood that the sentence would have been different had the error not occurred. We address each argument in turn.

Wilkerson's argument that prejudice should be presumed is at odds with this Court's decision in *Stevens* where we joined the Fourth, Sixth, Seventh, Ninth, and Tenth Circuits in holding that "noncompliance with [Rule 32(i)(1)(A)][8] does not require vacatur and resentencing without at least some showing of prejudice by the defendant." *Stevens*, 223 F.3d at 246. Although Wilkerson proposes limiting the presumption to violations where there was an opportunity for the error to affect the outcome, this would still not harmonize with *Stevens*. As *Stevens* indicates, a showing of prejudice requires a "reasonable likelihood that the sentence would have been different." *Id*. at 244. Since a "reasonable likelihood" of prejudice implies a degree of persuasion distinct from, and greater than, a mere showing of "opportunity," *Stevens* would appear to preclude the presumption that Wilkerson advocates.

Further, the case upon which Wilkerson bases his argument for a presumption, *United States v. Adams*, 252 F.3d 276 (2001), is inapposite to the right at stake in Rule 32(i)(1)(A). In *Adams*, we held that prejudice should be presumed when a district court

---

[8] At the time of *Stevens*, the PSR verification requirement was codified as Rule 32(c)(3)(A).

9

violates a defendant's right to allocution and an opportunity exists for the violation to have affected the outcome. 252 F.3d at 287. As we have noted elsewhere, the right to allocution is "indisputably more valued and 'deeply rooted'[9] than the verification requirement of Rule 32." *Stevens*, 223 F.3d at 246. The importance of the right arises from the fact that "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Adams*, 252 F.3d at 280 (quoting *Green v. United States*, 365 U.S. 301, 304 (1961) (plurality opinion)). Because of this, the Supreme Court has supported automatic resentencing when the right to allocution is violated. *Id.* at 281 (discussing *Hill v. United States*, 368 U.S. 424, 429 n.6 (1962)). While the Supreme Court's subsequent jurisprudence on the plain error standard has qualified this rule, our presumption of prejudice in *Adams* "follow[ed] logically from Supreme Court precedent." *Id.* at 288. The same cannot be said for the PSR verification requirement.[10]

---

[9] Whereas there was "little consensus" about the need for a PSR verification requirement until it was incorporated into the Federal Rules in 1983, the right to allocution is "ancient in origin"—dating as far back as the seventeenth century, when violations of the right required reversal on appeal. *Stevens*, 223 F.3d at 246.

[10] Wilkerson also points to two other decisions where this Court has extended the presumption of prejudice. Appellant's Reply Br. at 2 (citing *United States v. Syme*, 276 F.3d 131, 153–54 (3d Cir. 2002); *United States v. Knight*, 266 F.3d 203, 208 (3d. Cir. 2001)). Neither of these decisions, however, support Wilkerson's argument. In *Syme*, we applied the presumption to constructive amendments which, unlike violations of the allocution right, violate the U.S. Constitution. *Syme*, 276 F.3d at 154 n.8. Accordingly, we noted that our holding in *Syme* was "narrower" than our holding in *Adams*, since "the right of allocution is not grounded in the Constitution." *Id.* In *Knight*, we extended the presumption of prejudice to situations where the District Court made a clear error

There is, moreover, a functional basis for granting a presumption of prejudice in the context of an allocution error, but not a Rule 32(i)(1)(A) error. The impact of allocution is inherently intangible and generally unknowable, making it all but impossible for a defendant to reasonably prove that an allocution would have influenced the outcome. *See Adams*, 252 F.3d at 287 & n.9 (discussing "enormous difficulty" of proving prejudice in allocution context). By contrast, the impact of a Rule 32(i)(1)(A) violation, as here, is assessed based on the impact of specific, clearly defined factual information in the PSR. While we recognize that proving the relative impact of factual errors on the ultimate sentence is not always a straightforward or easy task, this difficulty inheres more in the general nature of plain error review than in the nature of the right itself. We decline, therefore, to extend the *Adams* presumption to the case at bar.

We turn then to Wilkerson's argument that a reasonable likelihood exists that the sentence would have been different had Rule 32(i)(1)(A) not been violated. If he had been given an opportunity to read the PSR, Wilkerson argues that it is "likely" he would have been able to make "a more developed challenge" to the inclusion of the concealed weapon offense. Appellant's Br. at 22. Wilkerson maintains that since this offense "was clearly important to the court," *id*. at 23, the failure to provide him an effective opportunity to dispute whether he was convicted—or whether the Government had met

---

regarding the applicable Guidelines sentence. *Knight*, 266 F.3d at 208. Needless to say, a situation where the District Court applies the wrong Guidelines recommendation creates a greater potential for prejudice than a failure to verify that a defendant read the PSR.

its burden of proving he was convicted—resulted in a longer sentence than would have otherwise been the case, especially since the District Court issued a sentence on the high end of the Guideline range. We again disagree. As we discuss below, Wilkerson has failed to demonstrate a reasonable likelihood that (1) a more developed challenge would have resulted in an exclusion of the offense, and that (2) exclusion of the offense would have reduced the sentence. Since both premises are necessary for a showing of prejudice here, Wilkerson's argument falls short.

We start first with whether a "more developed challenge" would have resulted in an exclusion of the concealed weapon offense. As an initial matter, we disagree with Wilkerson that the probation officer was "unable to document the . . . *conviction*," and that the Government failed, as a result, to meet its burden of proving that it occurred. Appellant's Br. at 23 (emphasis added). While the probation officer was unable to obtain the underlying details of the offense, she was able to obtain detailed information about the conviction itself, including the date of arrest, the date of the guilty plea, the court where it was adjudicated, and the docket number. Further, far from being "vague, unsupported" information, Appellant's Reply Br. at 8, the record shows that the probation officer obtained this information from the U.S. Probation Office in the Eastern District of North Carolina. Although it is unclear why details for this offense were not available when details for the drug paraphernalia offense were available, we cannot say, based on this alone, that the information lacks "sufficient indicia of reliability to support its probable accuracy," as is required when disputed information is considered for

12

sentencing purposes. *United States v. Miele*, 989 F.2d 659, 664 (3d Cir. 1993) (adopting U.S.S.G. § 6A1.3(a)).

We are similarly unpersuaded that the PSR information became unreliable by the mere fact that Wilkerson claims he was not convicted. For starters, we have previously held that a defendant's bare allegation that information in the PSR is incorrect, without more, is insufficient to require an evidentiary hearing to vet the information's accuracy. *United States v. Campbell*, 295 F.3d 398, 407 (3d Cir. 2002). Thus, even if Wilkerson *had* read the PSR and made a timely objection to the conviction's inclusion, the District Court could still have considered it if Wilkerson's only evidence was his bare allegation. The problem with relying on a defendant's bare allegation is particularly evident where, as here, the defendant's credibility has been brought into question. Here, Wilkerson himself admitted in his allocution that he had not been candid with the court during his earlier testimony at the hearing. When coupled with his changing accounts of what happened on the night of the offense, the District Court was justified in giving less weight to Wilkerson's claim than to the detailed information obtained from the probation office in North Carolina.

It is also worth noting that the transcript of the hearing suggests that Wilkerson may have conceded the possibility (1) that he was convicted and/or (2) that he committed the underlying conduct. Once it was explained to Wilkerson that his weapon charge had been consolidated with his drug charge, Wilkerson simply asked whether he had been arrested for both offenses at the same time. When the judge responded that the two

13

offenses had been consolidated for the purposes of disposition, Wilkerson did not respond. This indicates that Wilkerson's earlier denial may have simply been an assertion that he had not been carrying a concealed weapon at the time he was arrested for the drug offense. While not definitive, this interpretation is consistent with the fact that Wilkerson never contended at the hearing, nor in his briefs, that he did not actually carry a concealed weapon; his contention rather is that he had not been "arrested" or "convicted" for doing so. Accordingly, since the primary relevance of the conviction to the District Court's decision is the underlying conduct rather than the conviction itself, Wilkerson's failure to claim innocence further weakens the possibility that a more thorough vetting would have resulted in an exclusion of the offense.

Finally, even if we were to accept the unlikely proposition that a developed challenge would have resulted in the weapon offense being excluded from the PSR, there is no reasonable likelihood that this would have actually impacted the District Court's sentence. The District Court did reference the concealed weapon offense as a factor in its consideration. However, the District Court was clear that "the most concerning aspect" of Wilkerson's criminal history was his "unusual" disciplinary record in prison. Specifically, the District Court noted Wilkerson's 53 acts of misconduct while in prison, and the fact that this resulted in him serving the full ten years of a five-to-ten year sentence.[11] The District Court also emphasized the facts and circumstances of

---

[11] The District Court also referenced Wilkerson's prior robbery offense, which as the District Court noted, also involved a weapon.

Wilkerson's crime, which it described as "very, very serious." These facts and circumstances included Wilkerson claiming he was going to shoot someone with the gun, and Wilkerson attempting to fire the gun at Officer White during the arrest. The District Court's clear concern with the serious nature of the crime and Wilkerson's 53 acts of misconduct while in prison can readily explain why it chose to impose a sentence towards the higher end of the Guidelines. Although it is conceivable that the sentence may have been different had the District Court been convinced that the concealed weapon offense did not occur, we do not find this possibility to be reasonably likely. Accordingly, we will affirm.

## IV.

We now address Wilkerson's argument concerning the alcohol-related provision in the written sentence. Despite the fact that there was nothing in the PSR to indicate that Wilkerson needed alcohol treatment, a special condition in the written sentence bars Wilkerson from consuming alcohol during the supervisory release period and requires him to submit to compliance testing and participate in alcohol treatment. Wilkerson argues, and the Government concedes, that this is not reasonably related to either the offense or Wilkerson's history, and is therefore contrary to our ruling in *United States v. Pruden*, 398 F.3d 241, 248–49 (3d Cir. 2005). Since the Government agrees on this point, we need not consider Wilkerson's other arguments on the matter, and will remand for the limited purpose of striking the provision from the list of conditions for Wilkerson's supervised release.

**V.**

For the foregoing reasons, we will affirm the appellant's conviction and the District Court's sentence imposed on January 4, 2011 in all respects except that we will remand for the limited purpose of striking the alcohol-related provisions from the conditions of supervised release.