

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-29-2007

# USA v. Leekins

Precedential or Non-Precedential: Precedential

Docket No. 05-1658

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Leekins" (2007). *2007 Decisions.* Paper 826.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/826

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-1658

———

UNITED STATES OF AMERICA

v.

WILLIAM THOMAS LEEKINS,
Appellant

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 03-cr-00353)
District Judge: Honorable Sylvia H. Rambo

———

Submitted Under Third Circuit LAR 34.1(a)
October 24, 2005

Before: SLOVITER, FISHER, Circuit Judges,
and THOMPSON, District Judge[*]

(Filed June 29, 2007)

———

Dennis E. Boyle
Camp Hill, PA 17011

———

[*]Hon. Anne E. Thompson, United States District Judge for
the District of New Jersey, sitting by designation.

Attorney for Appellant

Thomas A. Marino
        United States Attorney
Theodore B. Smith, III
Eric Pfisterer
        Assistant United States Attorneys
Harrisburg, PA 17108

        Attorneys for Appellee


OPINION OF THE COURT


SLOVITER, Circuit Judge.

Appellant William Thomas Leekins appeals from the judgment of the District Court sentencing him to imprisonment for a term of 262 months. First, Leekins asserts that his sentence was imposed in violation of United States v. Booker, 543 U.S. 220 (2005), and that it denied him his Sixth Amendment right to a jury trial because it was based upon facts found by a judge at his sentencing hearing that he had not admitted in his plea colloquy. Second, Leekins argues the District Court erred in admitting a police report into evidence at the sentencing hearing because it bore no "indicia of reliability." U.S.S.G. § 6A1.3. We will affirm.[1]

**I.**

Leekins was charged in a two-count indictment with

_____

[1]We have jurisdiction to hear this appeal pursuant to 28 U.S.C § 1291 and 18 U.S.C. § 3742(a). This court reviews "factual findings relevant to the Guidelines for clear error" and exercises "plenary review over a district court's interpretation of the Guidelines." United States v. Grier, 475 F.3d 556, 570 (3d Cir. 2007) (en banc).

possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count I), and possession of a firearm by a person subject to a domestic abuse restraining order in violation of 18 U.S.C. § 922(g)(8) (Count II). He entered into a written negotiated plea agreement with the Government in which he agreed to plead guilty to Count I and to admit prior convictions of violent felonies (in his case, burglaries) which made him subject to the armed career criminal sentencing enhancement under 18 U.S.C. § 924(e). The Government agreed to recommend imposition of the mandatory minimum sentence of fifteen years under 18 U.S.C. § 922(g)(1).

Pursuant to that agreement, Leekins pled guilty and the Government dropped Count II of the indictment and recommended imposition of only the fifteen-year mandatory minimum sentence on Count I of the indictment. Nonetheless, the District Court did not follow the Government's recommendation. After a hearing, the Court, following its consideration of the testimony presented at the hearing and the police report introduced at the sentencing hearing, adopted the presentence report ("PSR").

The PSR contained the following uncontested facts:

> On November 15, 2003, officers responded to . . . a 9-1-1 hang-up call . . . . Officer Swank was the first to arrive at the residence. He approached the side door of the residence and observed that there was a dead-bolt lock lying on the kitchen floor and the door frame was splintered. He cautiously entered the residence and observed the defendant and an infant in a walker in the dining room area. Mr. Leekins told Officer Swank that he and his wife were just having an argument, but everything was alright.

> At this time, Officer Bloss arrived at the residence and encountered Nancy Leekins, the defendant's estranged wife, in front of the residence. She told the officer that Mr. Leekins had threatened to kill her with a gun and that she had an active Protection From Abuse

3

order against him. She also noted that her ten-month-old granddaughter was still in the residence. Officer Bloss proceeded into the residence and advised Officer Swank that Mr. Leekins was armed. The defendant, who had his hands in his pockets, was instructed to show the officers his hands.

. . . Shortly thereafter, the defendant surrendered to the officers. He had a pair of eyeglasses in one hand and a towel held to his throat. Mr. Leekins was taken to the hospital, where doctors reported that a bullet was lodged in his head, but had not penetrated his brain.

During a search of the residence, officers recovered a loaded .38 caliber Charter Arms revolver in the front bedroom, where a pool of blood was observed on the bed. They also found one spent shell casing in the bedroom. Officers also learned that Mr. Leekins was on work release at the time of the instant offense and had possession of a 1999 Chevrolet Malibu. Police located the vehicle parked one-half block away from the residence and recovered a black nylon holster.

PSR at ¶¶ 5-8.

Leekins contested the following portion of the PSR:

[After being asked to show his hands], Mr. Leekins turned and walked away from the officers. Officers continued to command Mr. Leekins to stop and show his hands. Mr. Leekins walked past the infant and headed toward the stairs. As the defendant reached the stairs, he turned and fired one shot in the officers' and infant's direction. Officers returned fire and Mr. Leekins fled up the stairs. Officer Swank removed the infant from the walker and took her outside.

PSR at ¶ 6.

The PSR concluded that Leekins had committed

4

attempted murder because he had fired a gun at police officers. Leekins related a materially different version of the facts to the probation officer. He maintains that he went to his wife's home with the intention of killing himself and kicked in the door, announcing, "This is my house, and this is where I want to die." PSR at ¶ 11. He contends that when the police entered Ms. Leekins's residence and they told him to drop his gun, he put his hands in the air because he had no gun to drop. He states that the police responded by shooting him in the left hand, and that he then ran upstairs, retrieved his wife's gun from her dresser drawer, and shot himself in the head.

At the sentencing hearing, Leekins' counsel repeated Leekins' denial that he had ever fired on police officers and counsel noted that at the state preliminary hearing there was testimony to the effect that police investigators had found no bullets in any piece of furniture that was behind the officers when Leekins had allegedly shot at them.

Leekins' estranged wife also presented testimony at the sentencing hearing[2] and stated that she was sitting in the dining room of her home with her ten-month-old granddaughter when she saw Leekins walk by and look into her dining room window. She called 911 on a wall-mounted phone, at which point Leekins "kicked the door in and ripped the phone out of the wall." App. at 49. He pushed her onto the floor next to her granddaughter, held a gun (which Ms. Leekins had never seen before) to her head, and yelled accusations that she had turned his family against him and "was going to let him sit in jail and rot." App. at 49.

According to Ms. Leekins, Leekins then demanded that she again call 911 and tell them not to send anyone. Backing

---

[2]Ms. Leekins gave testimony from her seat in the audience. There was no request by either party that she be sworn, and she wasn't. We discourage that practice but neither party raises that issue. It is apparent that the District Court accepted Ms. Leekins' version of the contested facts.

away, Ms. Leekins used the phone in the living room to call 911. The dispatcher informed her that a police officer was already en route. When the police arrived, Ms. Leekins walked outside and told an officer (Officer Bloss) that her husband was inside the house and had a gun.

Following Ms. Leekins' testimony, Leekins testified under oath, again denying having shot at the officers. Leekins admitted on cross-examination that the holster found in his car was the holster for the revolver he claimed to have obtained upstairs in the house.[3] During and since his plea colloquy, Leekins has repeatedly denied that he fired a gun at police officers.

In his written comments to the PSR and his argument at the sentencing hearing, Leekins objected to: (1) the use of the attempted murder guideline to determine his base offense level, (2) all upward adjustments based upon the allegation that he had fired at police officers, or otherwise committed a crime of violence, and (3) the District Court's refusal to grant him a downward departure under the Guidelines for acceptance of responsibility. The District Court accepted the PSR's sentence calculation without ruling on Leekins' objections to the PSR.

Leekins admitted in his plea agreement to being an armed career criminal subject to enhanced penalties under 18 U.S.C. § 924(e). The PSR concluded that Leekins possessed or used a firearm in connection with a crime of violence and therefore set his offense level at thirty-four pursuant to U.S.S.G. § 4B1.4(b)(3)(A), and his criminal history category at VI pursuant to U.S.S.G. § 4B1.4(c)(2).[4] Leekins' total offense level of thirty-four and criminal history category yielded a guideline

---

[3]In response to his wife's testimony, he also asserted that he had unplugged rather than "ripped" the phone from the wall.

[4]The District Court denied Leekins' request for a downward adjustment for acceptance of responsibility because the Court concluded that Leekins had not truthfully admitted conduct constituting the offense of conviction. We see no error.

imprisonment range of 262 to 327 months. The Court imposed a sentence of 262 months imprisonment, five years supervised release, a $2000 fine, and a $100 special assessment. Leekins filed a timely appeal.

## II.

We turn first to Leekins' contention that the District Court failed to apply Booker correctly and that it denied him his Sixth Amendment right to jury trial. In Booker, the Supreme Court held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 543 U.S. at 244 (extending the court's holding in Apprendi v. New Jersey, 530 U.S. 466 (2000)). However, as we have explained, in the second of Booker's two opinions,

> [t]he Court held that 18 U.S.C. § 3553(b)(1) [and 18 U.S.C. § 3742(e)], the provision[s] of the Sentencing Reform Act of 1984 that [made and relied on the Guidelines being mandatory, were] incompatible with the Court's constitutional ruling and that [those sections] must be severed and excised . . . . The net result was to delete the mandatory nature of the Guidelines and transform them to advisory guidelines for the information and use of the district courts in whom discretion has now been reinstated.

United States v. Ordaz, 398 F.3d 236, 239 (3d Cir. 2005).

Leekins does not argue that the District Court mistakenly treated the Guidelines as mandatory, and nothing in the record suggests any such error. In fact, the District Court explicitly acknowledged at the sentencing hearing that "the guidelines are now only advisory[.]" App. at 45.

We recognize that Leekins pled guilty with the expectation that he would be sentenced to fifteen years of

7

imprisonment, i.e. 180 months, and that the District Court's sentence of 262 months greatly exceeded that expectation. As counsel explained to the District Court, Leekins was fifty-two years old at the time of sentencing and hoped to be released by age sixty-seven, presuming parole at the earliest date on the sentence he faced on a plea in state court on charges stemming from the same incident. Obviously, that situation changed when the District Court sentenced him to 262 months. However, the plea agreement explicitly advised Leekins that the "maximum penalty for the offense is imprisonment for a period of life" and that "the appropriate sentence within the statutory maximums provided for by law . . . will be determined by the court at a sentencing hearing[.]" App. at 68. The District Court reiterated that advice during the colloquy on the change of plea: The Court: "You understand that the maximum penalty for the offense could be a mandatory minimum of 15 and a maximum of life?" The Defendant: "Life." App. at 31. Again the Court stated: "If anyone has estimated what your guideline would be, and should I find your guideline to be different from what they have estimated, you can't withdraw your guilty plea. Do you understand?" The Defendant: "Yes, I do." App. at 32.

At the conclusion of the hearing, the District Court concluded that "there are sufficient facts to sustain the findings in the pre-sentence report[,]" App. at 62, which concluded that he had "used or possessed the firearm . . . in connection with a crime of violence." PSR at ¶ 22. This finding resulted in the increased offense level and the consequential increase in his sentence.

Leekins' challenge to his sentence focuses on the fact that he was sentenced based on the District Court's factual finding that he was responsible for attempted murder and assault on a police officer, facts that he did not admit and that were not found by a jury. However, as Leekins' counsel recognizes in his supplemental memorandum, the situation presented is similar to that presented in United States v. Grier, 475 F.3d 556 (3d Cir. 2006) (en banc). In that case, the en banc majority rejected Grier's argument that the district court could not constitutionally sentence him on the basis of facts that he did not admit, that no

8

jury had found, and that the sentencing court had found by the preponderance of the evidence. In view of this court's <u>Grier</u> decision, to which we are bound, we reject Leekins' argument that the District Court violated his Sixth Amendment right to trial by jury and Fifth Amendment right to due process.

Nor can we categorize the District Court's sentence as unreasonable, the standard for appellate review of a sentence after <u>Booker</u>. <u>See</u> <u>Booker</u>, 543 U.S. at 261-62. The District Court credited the testimony of Leekins' estranged wife that Leekins held a gun to her head and threatened her. The District Court recognized that the Guidelines were advisory, and nonetheless sentenced Leekins to imprisonment for 262 months, a sentence that was at the bottom of the Guidelines range. We see no basis to hold that to be an unreasonable sentence.

## III.

Leekins next argues that the District Court erred in admitting the police report into evidence because (1) it was not verified or sworn, and (2) the police officers who prepared the report were not present and did not testify as witnesses. Leekins notes that this report was considered by the District Court over his objection, Appellant's Br. at 4 n.1, but that it was not made part of the record before us. The description of the offense conduct contained in the PSR was based in part on "investigative reports." PSR at ¶ 4. At the sentencing hearing, the District Court asked the probation officer whether the officer had seen "a police report in this." App. at 58. When the officer responded in the affirmative, the Court asked to see the report. The Assistant United States Attorney ("AUSA") responded that there was a "report from Penbrook Police Department, the officers who responded to the scene" and a "report from Dauphin County Criminal Investigation Division. They interviewed the officers who reported to the scene." App. at 59. The District Court asked to have the report of "just the officers who were at the scene" but the AUSA explained that "the report I'm handing over is an interview with the officers who responded to the scene." <u>Id.</u>

In response to this Court's request, the U.S. Attorney's office forwarded the Dauphin County Criminal Investigation report written by Dauphin County Detective Thomas E. Yurchison, which contains verbatim transcripts of Yurchison's interviews with Officers Swank and Bloss, who both recounted Leekins' firing a shot at them. The extent to which the District Court relied on the facts contained in the police report when it adopted the PSR is unclear, and we will therefore consider Leekins' argument as to the unreliability of the officers' statements in the police report.

In Shepard v. United States, 544 U.S. 13 (2005), the Supreme Court held that a sentencing court could not look to a police report to determine whether an earlier guilty plea qualified as a predicate conviction for purposes of the Armed Career Criminal Act. The plurality opinion in that case held that the sentencing court could look only to the charging documents, the written plea agreement, the transcript of the plea colloquy, and any explicit factual findings by the trial court to which the defendant assented. Because the opinion was limited to the narrow statutory issue before it, the opinion did not state that police reports were inadmissible as a general matter in sentencing hearings, and it has not been so interpreted.

Counsel for Leekins argues that "a mere police report is not inherently reliable," Apr. 10, 2007 ltr. at 5, and we do not disagree. On the other hand, a police report also is not inherently unreliable. Instead, we revert to the general principle that the facts upon which a judge bases a sentence must have "'sufficient indicia of reliability to support [their] probable accuracy.'" United States v. Miele, 989 F.2d 659, 663 (3d Cir. 1993) (quoting U.S.S.G. § 6A.1.3(a)). Such indicia may be sufficient even if they do not meet trial standards; the Federal Rules of Evidence do not apply. See U.S.S.G. § 6A1.3(a) ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability[.]" (emphasis added)); United States v. Brothers, 75 F.3d 845, 848 (3d Cir. 1996). For

10

example, a District Court may "credit hearsay evidence over sworn testimony, especially where there is other evidence to corroborate the inconsistent hearsay statement." Miele, 989 F.2d at 664.

Here, there is sufficient evidence that Leekins had a weapon when he entered the house, notwithstanding his statement to the contrary. First, Ms. Leekins testified at the sentencing hearing that Leekins had engaged in aggressive behavior with a gun just before the police arrived, including: (1) kicking down the door to her house, (2) "ripp[ing] the phone out of the wall" to disconnect her 911 call, App. at 49, (3) pushing her down on the floor, (4) placing a gun to her head, and (5) accusing her of turning his family against him and wanting him to "sit in jail and rot." Id.

Although, as noted above, Ms. Leekins' testimony was not sworn, "unsworn, but reliable and probative" evidence may be relied on for purposes of determining an appropriate sentence. United States v. Yeaman, 194 F.3d 442, 463 (3d Cir. 1999). The sentencing court had the benefit of observing Ms. Leekins' testimony and it can infer reliability from a witness's words and actions. We give great deference to a presiding judge's credibility determinations in sentencing proceedings because she is able to directly observe a testifying witness's tone and demeanor.

Second, Leekins' possession of the gun was corroborated by the presence in Leekins' automobile of the holster for the gun that he used to shoot himself. The holster's presence provides circumstantial evidence that Leekins had the gun with him when he arrived at Ms. Leekins' residence, corroborates Ms. Leekins' testimony that he had a gun with him when he kicked down her door, and casts doubt on Leekins' testimony that he found the gun upstairs in Ms. Leekins' house.[5]

---

[5]The PSR states that "one spent shell casing" was found in the bedroom, PSR at ¶ 8, while the police report states that the bedroom revolver had "two spent shell casings in the five shot

11

Third, the reliability of Leekins' testimony itself at the sentencing hearing is undermined by his counsel's statement that "Mr. Leekins has suffered a significant injury which has affected his ability to remember and recall events that happened." App. at 45.

Finally, we observe that the verbatim statements by the two police officers attached to the police report that Leekins shot at them, along with the above-noted corroborative evidence and testimony, distinguishes this case from others where the factual finding at sentencing was based in large part upon a sole, inherently unreliable source. See Miele, 989 F.2d at 660-61 (concluding that a finding of drug quantity as estimated in the PSR and adopted by district court did not meet the Guidelines' "sufficient indicia of reliability" standard "[i]n view of the numerous inconsistencies in the record, the fact that the source of most of the critical evidence was an addict-informant with an impaired memory, and the lack of any findings by the district court other than a single conclusory finding as to drug quantity").

We have observed that "a sentencing judge may consider information that is largely unlimited as to kind or source,"

---

cylinder. There were also three live rounds in the cylinder." Report at 13. The Police Report also contains a narrative based upon Detectives Yurchison and Woodring's November 25, 2003 interview with Leekins at the Dauphin County Prison. This narrative reports that Leekins stated he "took a .38 cal. handgun with him to his wife's house[,]" Report at 7, that he "never fired the gun prior to the day of the incident[,]" id., and that he could not remember firing the gun at officers, but that "[i]t could have happened." Report at 8. As the District Court explicitly adopted the facts as recounted in the PSR, and not the facts set forth in the police report, it is unclear to what extent this report was relied upon by the Court. We will only note here that these facts are inconsistent with Leekins' testimony as to events that day at the house.

12

United States v. Paulino, 996 F.2d 1541, 1547 (3d Cir. 1993) (internal citation and quotation marks omitted). In this case, the detail and internal consistency of the transcribed interviews with the officers regarding the fact of the shooting, together with the other corroborating material, provide sufficient indicia of the reliability of the officers' version of the shooting. See Crawford v. Jackson, 323 F.3d 123, 130 (D.C. Cir. 2003) (where police investigative report was "quite detailed," and provided "a fairly full account of the circumstances surrounding" a parole violation, such detail held to be "indicia of reliability" and document held to be appropriately considered in parole board's revocation); cf. Gambino v. Morris, 134 F.3d 156, 162-63 (3d Cir. 1998) (vague and conclusory assertion in police report that petitioner was linked to organized crime inappropriately considered by parole commission). We therefore conclude that the District Court could have reasonably found that the version of events recounted in the PSR – based in part on the police report – was more credible than that provided by Leekins.[6]

## IV.

For the foregoing reasons, we will affirm the District Court's judgment of sentence.

---

[6]The District Court noted that "even if I ignore the fact that the officers say he shot at them, we have the fact that he [held] the gun at the head of his wife." App. at 46. The PSR notes that Leekins was charged with aggravated assault and burglary under Pennsylvania law, among other crimes, but does not specify the facts underlying each charge. Attached to the police report is what appears to be a draft police criminal complaint that charges Leekins with aggravated assault upon Ms. Leekins, among other crimes. The parties do not refer to the draft and it does not enter into our consideration.