**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 4, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

PABLO ARTURO PADILLA,

    Defendant - Appellant.

No. 18-5009
(D.C. No. 4:17-CR-00019-GKF-8)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **HOLMES**, and **CARSON**, Circuit Judges.

---

In September 2017, Pablo Padilla pleaded guilty to a count of knowingly

and intentionally distributing heroin, in violation of 21 U.S.C. § 841(a) and

(b)(1)(C). In calculating Mr. Padilla's total offense level under the United States

Sentencing Guidelines (the "Guidelines"), the presentence investigation report

(the "PSR") included 17.38 grams of methamphetamine and a .25 caliber pistol,

each of which Mr. Padilla had allegedly possessed during a state arrest in August

2016. In a written filing, and again at his sentencing hearing, Mr. Padilla

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

objected to the PSR's inclusion of the methamphetamine and the firearm, arguing in relevant part that the government had not shown that any pertinent evidence was sufficiently reliable to establish the necessary sentencing facts. The district court, however, overruled Mr. Padilla's objection, concluding that the police report from the August 2016 arrest—which had not been introduced into evidence—was sufficiently reliable to establish that Mr. Padilla possessed the 17.38 grams of methamphetamine and the firearm.

Mr. Padilla now argues that the district court clearly erred in making factual findings at sentencing by merely relying on a police report that had not been entered into evidence, and that this error warrants **reversal and remand for resentencing**. Moreover, Mr. Padilla argues that we should limit our remand so that resentencing is confined to the existing record. As to both matters, we agree with Mr. Padilla. Accordingly, exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we **reverse** the district court's sentencing judgment and **remand** the case for resentencing based on the record as it now stands.

**I**

Mr. Padilla and fourteen others were federally indicted in 2017 for their involvement in a Tulsa-based conspiracy to distribute methamphetamine and heroin. The conspiracy was alleged to have begun "as early as in or about

January 2016" and to have continued up to the date of the operative indictment,[1] that is, April 10, 2017. R., Vol. I, at 45 (Superseding Indictment, filed Apr. 10, 2017). As reflected in that indictment, federal investigators had conducted two controlled purchases of heroin from Mr. Padilla.

In September 2017, Mr. Padilla pleaded guilty to a single count of knowingly and intentionally distributing heroin, in violation of 21 U.S.C. § 841(a) and (b)(1)(C). Pursuant to a plea agreement, the government agreed to dismiss the remaining counts against Mr. Padilla, and he reserved the right to appeal from contested sentencing issues.

In the run-up to sentencing, the United States Probation Office prepared Mr. Padilla's PSR which, in its "Offense Conduct" section, included an August 6, 2016 traffic-stop arrest of Mr. Padilla in Sand Springs, Oklahoma (the "August 6 arrest").[2] R., Vol. III, at 12 (PSR, dated Dec. 5, 2017). According to the PSR, at the time of that arrest, Mr. Padilla was in possession of 17.38 grams of methamphetamine and a .25 caliber pistol. The PSR's inclusion of the methamphetamine increased Mr. Padilla's base offense level under the Guidelines

---

[1] Mr. Padilla was originally indicted in February 2017; that indictment was superseded by another indictment in April 2017. Both indictments charged Mr. Padilla with participating in the same Tulsa-based drug conspiracy.

[2] State charges filed against Mr. Padilla as a result of the August 6 arrest were dismissed in the period between the February 2017 indictment and the April 2017 superseding indictment.

3

from sixteen to twenty, *see* U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c) (U.S. SENTENCING COMM'N 2016) [hereinafter U.S.S.G.],[3] and the inclusion of the pistol resulted in a two-level enhancement for possessing a firearm in connection with a drug offense, *see id.* § 2D1.1(b)(1)—yielding an adjusted offense level of twenty two before an offense-level reduction for acceptance of responsibility.

In a written objection to the PSR, Mr. Padilla contested the inclusion in the Guidelines sentencing calculation of the 17.38 grams of methamphetamine and the firearm that he had allegedly possessed during the August 6 arrest. In part, as relevant here, Mr. Padilla argued that incorporating the methamphetamine and firearm into the computation of his offense level would violate his due-process rights. To that end, Mr. Padilla noted that no evidence pertaining to the methamphetamine and firearm had been provided during discovery, and more broadly argued that the government had not shown that any relevant evidence was sufficiently reliable to establish the sentencing facts necessary to support the enhancements at issue. R., Vol. I, at 117–18 (Obj. to PSR and Sentencing Mem., filed Dec. 5, 2017) ("[F]or the same reasons set forth . . . in relation to the methamphetamine, including the evidence [concerning the firearm] from the August 6, 2016 arrest violates due process, as there are insufficient indicia of

---

[3]     The Probation Office relied on the 2016 edition of the Guidelines in computing Mr. Padilla's Guidelines sentencing range. Mr. Padilla does not challenge this decision on appeal. Therefore, in resolving his sentencing challenge, we also rely on this edition of the Guidelines.

reliability and defense counsel has not had the opportunity to review said evidence."). Thus, reasoned Mr. Padilla, the government had not met its burden of proving by a preponderance of the evidence his possession of 17.38 grams of methamphetamine and the firearm. Notably, the government's written response to Mr. Padilla's objection did not directly address these reliability-of-the-evidence arguments with respect to either the methamphetamine or the firearm.

In a subsequent addendum to the PSR, the Probation Office responded to Mr. Padilla's objection, stating in relevant part that evidence of the methamphetamine and firearm "consists of a Tulsa Police Department report prepared and filed by a Tulsa Police officer on the day of the [August 6] arrest." R., Vol. III, at 28 (Addendum to PSR, dated Dec. 11, 2017). "Police reports," the Probation Office contended in its addendum, "are the exact type of evidence upon which the [sentencing court] can rely as police reports have a sufficient indicia of reliability." *Id.* And, though the Probation Office noted "the government's oversight in not providing these arrest records with the bulk of the discovery to defense counsel," it claimed that "a simple search" of Mr. Padilla's name in a publicly accessible state database (specifically, the Oklahoma Supreme Court Network) would have revealed the charge relating to the August 6 arrest and the corresponding probable-cause affidavit. *Id.*

At the sentencing hearing six weeks later, Mr. Padilla's counsel once more objected to the PSR's inclusion of the methamphetamine and the firearm:

[N]one of that evidence was brought into this case. We don't know if . . . this information was contained in charging papers that were filed in Creek County[, Oklahoma]. Nobody in this case on either the government's side or the defense['s] side has ever tested the veracity of this evidence. No photographs of the handgun were produced or the bullets, the magazine, that the bullets were allegedly in. There's no scientific reports showing that the substance was actually methamphetamine. There's no photographs of a substance to even show that there was something that looks like methamphetamine. . . .

So I don't believe the government could come into this courtroom and say that we could show by a preponderance of the evidence that this . . . was, in fact, methamphetamine and it weighed this amount and so this should be included within the court's analysis for sentencing.

R., Vol. II, at 18–19 (Sentencing Hr'g Tr., dated Jan. 30, 2018). The government offered no response beyond referring to its earlier written response, which did not directly address Mr. Padilla's reliability-of-the-evidence arguments. Significantly, the government did not attempt to enter into evidence the police report from the August 6 arrest (the "August 6 police report") or any other evidence to establish Mr. Padilla's alleged possession of the 17.38 grams of methamphetamine and the firearm.

The district court overruled Mr. Padilla's objection, finding that the August 6 police report—though it was not in evidence—was "sufficiently reliable to establish a sentencing fact." *Id.* at 23–24. While the court acknowledged that "the government did not provide this arrest record [in] discovery to defense

counsel," it echoed the Probation Office's reasoning contained in the PSR addendum, noting that "Padilla himself knew of the [August 6] incident" and that he could have readily searched the relevant state database to view the charge relating to that arrest and the associated probable-cause affidavit. *Id.* at 24. The court also remarked that the Probation Office is not limited in its investigation of a case to the evidence that the government provides.

Based on these findings at his sentencing hearing, the court sentenced Mr. Padilla to thirty months' imprisonment. He filed a notice of appeal shortly thereafter. On appeal, he argues that the government failed to meet its burden at sentencing to establish his possession of 17.38 grams of methamphetamine and a firearm. He primarily grounds this argument on the contention that the district court erred by establishing his methamphetamine and firearm possession merely by relying on a police report that had not been entered into evidence. Additionally, Mr. Padilla argues that—if we agree with him and determine that the district court erred—our remand should instruct the court to limit resentencing to the existing record because the government was made aware at sentencing of the deficiency in its proof concerning the methamphetamine and the firearm, yet made no effort to cure that deficiency.

**II**

We agree with Mr. Padilla that the district court clearly erred in finding that he possessed 17.38 grams of methamphetamine and a firearm on August 6 by

7

merely relying on a police report that had not been introduced into evidence. Based on this reliance, the court upwardly adjusted Mr. Padilla's Guidelines sentence. We reverse the court's sentencing judgment due to this error and remand the case for resentencing.

## A

At bottom, Mr. Padilla contends that the district court improperly calculated his advisory Guidelines sentencing range because it based upward adjustments in that range on factual findings concerning his alleged possession of methamphetamine and a firearm that rested on an unreliable foundation—*viz.*, on a police report that had not been admitted into evidence. This contention amounts to a challenge to the procedural reasonableness of Mr. Padilla's sentence. *See United States v. Sutton*, 520 F.3d 1259, 1262 (10th Cir. 2008) ("[P]rocedural reasonableness addresses whether the district court correctly calculated the advisory Guidelines range and whether the facts relied on were adequately supported, i.e. not clearly erroneous."); *see also United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008) ("Procedural reasonableness addresses whether the district court incorrectly calculated or failed to calculate the Guidelines sentence, . . . relied on clearly erroneous facts, or failed to adequately explain the sentence.").

At sentencing, the government bears the burden of proving by a preponderance of the evidence the facts necessary to support an upward

8

adjustment in the Guidelines range. *See, e.g.*, *United States v. Flonnory*, 630 F.3d 1280, 1285–86 (10th Cir. 2011); *see also United States v. Aragon*, 922 F.3d 1102, 1108 (10th Cir. 2019) ("The government has the burden of proof and production during the sentencing hearing to establish the amounts and types of controlled substances related to the offense. . . . by a preponderance of the evidence." (omission in original) (quoting *United States v. Deninno*, 29 F.3d 572, 580 (10th Cir. 1994))); *United States v. Foy*, 641 F.3d 455, 470 (10th Cir. 2011) (stating that to establish a sentencing enhancement for possession of a dangerous weapon in connection with a drug-trafficking offense, *see* U.S.S.G. § 2D1.1(b)(1), "[t]he government bears the initial burden of showing possession by a preponderance of the evidence").

As part of our evaluation of the procedural reasonableness of a sentence, we review for clear error[4] a sentencing court's assessment of whether the

---

[4]  The government argues that Mr. Padilla did not make a proper factual objection to the PSR's findings that he possessed the methamphetamine and the firearm during the August 6 arrest, and thus that his challenge on appeal to those findings—including his challenge to the reliability of the evidence supporting them (i.e., the August 6 police report)—should be subject to plain-error review. Specifically, the government notes that sentencing courts "may accept any undisputed portion of the [PSR] as a finding of fact," FED. R. CRIM. P. 32(i)(3)(A), and, accordingly, "[i]f a defendant fails to specifically object to a fact in the PSR, the fact is deemed admitted by the defendant and the government need not produce additional evidence in support of the admitted fact," *United States v. Hooks*, 551 F.3d 1205, 1217 (10th Cir. 2009). While the government acknowledges that Mr. Padilla claimed before the district court that "the police report used to establish both the methamphetamine and gun possession lacked

(continued...)

9

sufficient indicia of reliability and should not be considered," the government argues that this claim was "legal in nature and failed to dispute specifically that [Mr. Padilla] possessed methamphetamine and a firearm during the August 6 traffic stop." Aplee.'s Resp. Br. at 12.

We reject this argument for two salient reasons. First, the district court did not adopt the PSR based on its understanding that Mr. Padilla had not made a proper factual objection. Instead—as the government acknowledges—the court overruled Mr. Padilla's objection to the PSR's factual findings by independently relying on the August 6 police report, which it deemed sufficiently reliable to establish Mr. Padilla's methamphetamine and firearm possession. *See* R., Vol. II, at 23–24 ("The court . . . finds that *the police report* filed after the defendant's arrest on August 6, 2016, is sufficiently reliable to establish a sentencing fact." (emphasis added)); Aplee.'s Resp. Br. at 15 ("[The] sentencing court used *the August 6 police report* to establish findings of fact that it cited in overruling Padilla's objections." (emphasis added)); *id.* at 19 ("The district court arrived at its [factual] conclusion [regarding the methamphetamine and firearm possession] not merely by restating the findings of the PSR, but through an independent source of evidence—the August 6 police report.").

Second, the government's contention that Mr. Padilla's objection to the PSR did not create a factual dispute—and thus that the PSR's facts were effectively admitted by Mr. Padilla under Federal Rule of Criminal Procedure 32(i)(3)(A)—is belied by our cases. They indicate that Mr. Padilla's specific challenge to the inclusion of the methamphetamine and firearm in the PSR properly established the existence of a factual dispute: consistent with the approach articulated in these cases, he "show[ed] that the information in the [PSR] was unreliable" by "articulat[ing] the reasons why the facts contained therein were untrue or inaccurate." *United States v. Barnett*, 828 F.3d 1189, 1193 (10th Cir. 2016) (quoting *United States v. Chee*, 514 F.3d 1106, 1115 (10th Cir. 2008)); *see, e.g.*, *United States v. Martinez*, 824 F.3d 1256, 1259, 1261 (10th Cir. 2016) (treating defendant as having raised a challenge to the reliability of the evidence supporting a sentencing enhancement where defendant had objected that the relevant portion of the PSR was "not readily provable nor supported by credible evidence"); *United States v. Cook*, 550 F.3d 1292, 1294–95 (10th Cir. 2008) (indicating that defendant had effectively raised a challenge to the reliability of the evidence supporting a sentencing enhancement where defendant

(continued...)

10

had filed a written objection to the enhancement and then argued at his sentencing hearing that the "documents provided in response to his objections to the PSR were unreliable, and therefore did not prove [the factual findings on which his enhancement was predicated] by a preponderance of the evidence"); *United States v. Martinez-Jimenez*, 464 F.3d 1205, 1207, 1208–09 (10th Cir. 2006) (countenancing defendant's challenge to the reliability of the evidence supporting a sentencing enhancement where she had objected to several prior convictions listed in the PSR on the ground that the "evidence that she had been convicted in those instances was insufficient"); *United States v. Keifer*, 198 F.3d 798, 799–800 (10th Cir. 1999) (crediting defendant as having raised a proper factual objection to a loss amount in the PSR relating to pending state charges where he had objected on the basis that the loss amount was "speculative because he had not been convicted of the [state] charges and was unaware of the evidentiary support for them"); *cf. United States v. Mateo*, 471 F.3d 1162, 1167 & n.3 (10th Cir. 2006) (defendant did not "challenge any of the facts included in the PSR" because he did not "claim that the facts in the PSR [were] inaccurate *or* that *the PSR include[d] information that is not reliable*" (emphases added)). As these cases suggest, a challenge to the reliability of the government's evidence to prove certain facts is effectively a contention that the government has not carried its burden to establish the veracity of those facts by a preponderance of the evidence.

Nor, as the government further argues, was Mr. Padilla required to make a second objection in order to preserve his argument on appeal. To be sure, we have held that in order to preserve an argument that the district court failed to make a necessary factual finding regarding a disputed fact in the PSR, a defendant must make both an initial objection to that fact and then later object once the district court has failed to make a specific finding. *See United States v. Williamson*, 53 F.3d 1500, 1526–27 (10th Cir. 1995); *see also United States v. Warren*, 737 F.3d 1278, 1284–85 (10th Cir. 2013). But Mr. Padilla's argument on appeal is not that the district court failed to "rule on the dispute" arising from his objection to the PSR, FED. R. CRIM. P. 32(i)(3)(B), nor that the court's explanation in resolving that dispute was not "definite and clear," *United States v. Pena-Hermosillo*, 522 F.3d 1108, 1111–13 (10th Cir. 2008) (quoting *United States v. Williams*, 374 F.3d 941, 947 n.9 (10th Cir. 2004)). Rather, Mr. Padilla's challenge relates to the substantive soundness of the district court's finding—*viz.*, the question of whether the district court clearly erred in finding that Mr. Padilla's alleged possession of the methamphetamine and firearm on August 6

(continued...)

11

evidence upon which an enhancement was based "lacked sufficient indicia of reliability to support [its] probable accuracy." *Martinez*, 824 F.3d at 1261; *Martinez-Jimenez*, 464 F.3d at 1209–10 ("We . . . conclude that the district court did not clearly err in finding that the evidence establishing [the defendant's] prior conviction was sufficiently reliable."). To constitute clear error, the sentencing court's determination must be found by this court to be "simply not plausible or permissible in light of the entire record on appeal, remembering that we are not free to substitute our judgment for that of the district judge." *Cook*, 550 F.3d at 1295 (quoting *United States v. McClatchey*, 316 F.3d 1122, 1128 (10th Cir. 2003)). In other words, "[w]e will not find clear error unless 'our review of the entire record leaves us with the definite and firm conclusion that a mistake has been made.'" *Id.* (quoting *United States v. Ary*, 518 F.3d 775, 787 (10th Cir. 2008)).

**B**

"District courts are not strictly bound by the Federal Rules of Evidence at sentencing hearings." *United States v. Ruby*, 706 F.3d 1221, 1229 (10th Cir. 2013). But, while a sentencing court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial," such

---

[4](...continued)
was reliably established by the August 6 police report, which had not been admitted into evidence.

relevant information must have "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a); *see also Cook*, 550 F.3d at 1296 ("[H]earsay statements may be considered at sentencing if they bear 'some minimal indicia of reliability.'" (quoting *United States v. Browning*, 61 F.3d 752, 755 (10th Cir. 1995))). "This reliability floor is a requirement of due process," *Ruby*, 706 F.3d at 1229, helping to enforce "a defendant's right not to be sentenced on the basis of materially incorrect information," *Cook*, 550 F.3d at 1296.

Not every police report satisfies the reliability floor. *See Ruby*, 706 F.3d at 1230 (describing potential "concerns" with the police report at issue, including the police officer's accuracy in recording information provided to him); *United States v. Dougan*, 684 F.3d 1030, 1033 n.3 (10th Cir. 2012) ("[N]ot every [police] complaint [i.e., report] has sufficient indicia of reliability for use in sentencing."); *see also United States v. Jordan*, 742 F.3d 276, 280 (7th Cir. 2014) ("Police reports are not presumed to be categorically reliable."); *United States v. Johnson*, 710 F.3d 784, 789 (8th Cir. 2013) ("[P]olice reports may be demonstrably reliable evidence of the fact that an arrest was made [but] they are significantly less reliable evidence of whether the allegations . . . they contain are true." (quoting *United States v. Bell*, 785 F.2d 640, 644 (8th Cir. 1986))); *United States v. Leekins*, 493 F.3d 143, 149 (3d Cir. 2007) (remarking that police reports are

13

neither "inherently reliable" nor "inherently unreliable"); *accord Olivas-Motta v. Holder*, 746 F.3d 907, 918–19 (9th Cir. 2013) (Kleinfeld, J., concurring).

More specifically, police reports are not inherently reliable because they "can be adversarial in nature, arising from a confrontation between a suspect and a police officer." *Jordan*, 742 F.3d at 280; *see Bell*, 785 F.2d at 643–44 ("[P]olice reports . . . do not bear the same indicia of reliability as . . . laboratory reports. . . . The relationship between police officers and those whom they arrest is much more personal and adversarial in nature than that between chemists and those whose urine they test."). Relatedly, police reports "can also be advocacy pieces, written for prosecutors to use in deciding whether or how to charge a suspect." *Jordan*, 742 F.3d at 280; *see Prudencio v. Holder*, 669 F.3d 472, 483 (4th Cir. 2012) (noting that "police reports . . . . are designed only to permit a determination of probable cause"). And, typically, police reports "are generated early in an investigation . . . [and thus] do not account for later events, such as . . . amendments[] or corrections." *Prudencio*, 669 F.3d at 483–84.

Indeed, for these very reasons, the Federal Rules of Evidence—"[d]espite their liberality toward public and business records"—explicitly omit police reports from the hearsay exception for public records. *Olivas-Motta*, 746 F.3d at 918; *see* FED. R. EVID. 803(8)(A)(ii) (excluding, in criminal cases, "a matter observed by law-enforcement personnel" from the hearsay exception for public records); *see also* FED. R. EVID. 803 advisory committee's note to 1974 enactment

14

("Ostensibly, the reason for this exclusion is that observations by police officers . . . are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases.").

And because police reports—as a category of evidence—are not inherently reliable, it follows that courts cannot resolve a disputed sentencing fact simply by assuming that information contained in a police report meets the due-process "reliability floor." *Ruby*, 706 F.3d at 1229. Instead, sentencing courts must make a case-by-case reliability determination. In so doing, they may examine the record, as a whole, to discern whether there is additional evidence to corroborate sufficiently the relevant information that the police report is being offered to establish. They also may find that certain features of the police report itself—such as its level of detail, internal consistency, and quality—independently support the probable accuracy of the relevant information contained therein. *See, e.g.*, *Jordan*, 742 F.3d at 280 ("We cannot simply assume that any police report . . . is reliable *without more information or corroborating evidence*." (emphasis added)); *see also Martinez*, 824 F.3d at 1262–63 (concluding that statements contained in a police report could be relied on at sentencing given the "substantial corroborative evidence" that those statements were true); *United States v. Harrison*, 809 F.3d 420, 424 (8th Cir. 2015) ("Whether a police report is sufficiently reliable is a question we examine 'on a

15

case-by-case basis, considering all the relevant circumstances . . . .'" (quoting *Bell*, 785 F.2d at 644)); *United States v. Jimenez*, 275 F. App'x 433, 438 (5th Cir. 2008) (unpublished) (concluding that the police reports at issue had "some indicia of reliability" in part because they were "long and detailed"); *Cook*, 550 F.3d at 1297 (holding that statements from two witnesses, contained in a police officer's affidavit and in a police report, were sufficiently reliable for use at sentencing in part because each witness's statements corroborated the statements of the other); *Leekins*, 493 F.3d at 151 (determining that transcribed interviews contained in a police report were sufficiently reliable in part because of their "detail and internal consistency"); *Crawford v. Jackson*, 323 F.3d 123, 130 (D.C. Cir. 2003) (holding that a police report was sufficiently reliable for use at parole-revocation hearing in part because it was "quite detailed, an indicia of reliability," as it provided "a fairly full account of the circumstances surrounding" the disputed facts).

## C

In overruling Mr. Padilla's objection that there was no reliable evidence to support his alleged possession of 17.38 grams of methamphetamine and a firearm, the district court did not cite any evidence in the record to corroborate that alleged possession. Rather, the court overruled Mr. Padilla's objection based on a finding that "the [August 6] police report . . . is sufficiently reliable to establish a sentencing fact." R., Vol. II, at 23–24.

16

As noted, however, *see supra* Section II.B, police reports are not inherently

reliable. *See, e.g.*, *Ruby*, 706 F.3d at 1230; *Leekins*, 493 F.3d at 149. While we

do not dispute that *some* police reports contain sufficient indicia of reliability to

support the probable accuracy of information that they contain, the district court

was obliged to specifically determine that the August 6 police report contained

such indicia before relying on that report. *See, e.g.*, *Harrison*, 809 F.3d at 424

(explaining that "[w]hether a police report is sufficiently reliable" must be

determined "on a *case-by-case basis*, considering all the relevant circumstances"

(emphasis added) (quoting *Bell*, 785 F.2d at 644)).

Moreover, it is improper to find that a specific police report bears sufficient

indicia of reliability to support the probable accuracy of the information it is

being offered to establish *unless* that police report has been first entered into

evidence.[5] We articulated this position most clearly in *Dougan*. There, the

defendant had objected to the PSR's characterization of a prior conviction; the

sole source for that characterization was a police complaint (i.e., report) that had

---

[5]     We note that where there is evidence in the record to corroborate the relevant information in a police report, a sentencing court may rely on that information even if the police report is not in evidence and the relevant information it contains is instead merely summarized in a record document such as the PSR. *See Martinez*, 824 F.3d at 1260, 1262–63 (upholding the reliability of statements in a police report for use at sentencing—even though "[t]he government didn't introduce the . . . police reports into evidence"—because those statements were supported by "substantial corroborative evidence"); *Ruby*, 706 F.3d at 1229–30 (same).

17

not been admitted into evidence. 684 F.3d at 1032, 1033 n.3. We noted that the district court had examined the complaint during "a sidebar, off-the-record discussion [at the sentencing hearing] with the probation officer who authored the PSR. . . . and then chose to rely on it." *Id.* In overruling the defendant's objection, the court seemed to presume that the specific police complaint in question was sufficiently reliable to support the probable accuracy of its characterization. *Id.* at 1033 (reciting the sentencing court's reasoning, which was that "[t]he complaint of the arresting officer clearly states what it states," and that the court would "not . . . ignore the report of the complaining officer in that case").

On appeal, however, we concluded that the sentencing court's approach constituted clear error. *Id.* at 1033 n.3. Specifically, we noted that "not every [police] complaint has sufficient indicia of reliability for use in sentencing," and thus, while we did not question that *some* police complaints bear sufficient indicia of reliability to support the probably accuracy of their characterizations of prior convictions, the sentencing court was required to determine that the *specific police complaint at issue* was a reliable police complaint. *Id.* And this determination, we elaborated, required the police complaint to have been entered into evidence. *Id.* ("Because the government bears the burden of proving contested facts at sentencing by a preponderance of the evidence, the failure to obtain the admission of the [police] complaint in evidence . . . is *fatal* to its claim

18

that the [police complaint] was reliable." (emphasis added)).  Relatedly, we added

that "[w]ithout a copy of the complaint in the record," we could not, on appeal,

"assess whether [the complaint] bears sufficient indicia of reliability for use by

the [sentencing] court."  *Id.*

To be sure, *Dougan* was ultimately decided on other grounds, *id.* at

1033–34, and thus its discussion of the sentencing court's deficient factfinding

with respect to the police complaint arguably is dicta, *see United States v. Titties*,

852 F.3d 1257, 1273 ("[D]icta are statements and comments in an opinion

concerning some rule of law or legal proposition not necessarily involved nor

essential to determination of the case at hand." (quoting *In re Tuttle*, 291 F.3d

1238, 1242 (10th Cir. 2002))); *accord Thompson v. Weyerhaeuser Co.*, 582 F.3d

1125, 1129 (10th Cir. 2009).  Even if *Dougan*'s language is dicta, however, it is

well-reasoned and "emphatic" dicta.  *United States v. Garcia*, 413 F.3d 201, 232

n.2 (2d Cir. 2005) (Calabresi, J., concurring) ("Emphatic dicta will and should be

afforded more weight by later panels than casual dicta.").  In this regard, the

*Dougan* panel relied on our caselaw and carefully reasoned from the proposition

that "not every complaint has sufficient indicia of reliability for use in

sentencing" in order to arrive at its unequivocal holding—*viz.*, the district court

"clearly erred" in accepting the PSR's factual characterization of the defendant's

conviction, where that characterization was solely based on a police complaint

that was never entered into evidence.  684 F.3d at 1033 n.3.  Therefore, even if

19

*Dougan*'s police-complaint discussion is dicta, it has considerable power to persuade. And we in fact are persuaded by it because it squares with logic and common sense.

In this connection, if a class of documents—such as police complaints or police reports—is not inherently reliable, then it makes sense that any individual document within that class cannot be *assumed* to be sufficiently reliable to establish a sentencing fact. Rather, there must be a finding that the *specific* document at issue contains sufficient indicia of reliability to support the probable accuracy of the information it is being offered to establish. And such a finding is logically appropriate only where the document has been entered into evidence so that the district court may, on the record, assess factors bearing on the document's veracity such as the level of detail, internal consistency, and overall quality of that document. *See, e.g.*, *Leekins*, 493 F.3d at 151; *Crawford*, 323 F.3d at 129–30. The document's admission into evidence before the sentencing court also is logically necessary because it permits us on appeal to properly evaluate the court's determination of "whether [the document] bears sufficient indicia of reliability for use [at sentencing]." *Dougan*, 684 F.3d at 1033 n.3; *cf. United States v. Vasquez*, 985 F.2d 491, 494 (10th Cir. 1993) ("When the record on appeal fails to include copies of the documents necessary to decide an issue on appeal, the Court of Appeals is unable to rule on that issue."). Thus, guided by *Dougan*, we conclude that the district court clearly erred in finding that Mr.

20

Padilla possessed methamphetamine and a firearm during the August 6 arrest by merely relying on the contents of a police report that had not been entered into evidence.

**D**

The government—which does not even cite *Dougan* in its appellate brief—argues that it was not obliged under our caselaw to obtain the admission of the August 6 police report into evidence. In so arguing, the government effectively contends that the district court was permitted to rely on the report, even without it having been entered into evidence, in finding that Mr. Padilla possessed the 17.38 grams of methamphetamine and the firearm. The government, moreover, argues that Mr. Padilla's alleged methamphetamine and firearm possession was in fact corroborated by evidence that *was* in the record, and it also suggests that it is significant that Mr. Padilla, at some point before sentencing, may have had access to the August 6 police report. As we now explain, these arguments are unpersuasive.

The government first seeks refuge in *United States v. Walters*, 269 F.3d 1207 (10th Cir. 2001), which it describes as "specifically h[olding] that due process is not violated when a court enhances a defendant's sentence using police reports that were inadvertently not produced to the defense in discovery, so long as the oversight was not material," Aplee.'s Resp. Br. at 20. *Walters*, however, is inapposite. In that case, the defendant had received a sentencing enhancement for

21

possessing a stolen gun in connection with a felony. *See* U.S.S.G. § 2K2.1(b)(4).

Challenging that enhancement on appeal, he argued that the government violated his due-process rights by having failed to disclose the FBI report that was the source of the PSR's conclusion that the gun he possessed was in fact stolen. *Walters*, 269 F.3d at 1215. Critically, however, the defendant's due-process arguments were made on a theory that the withheld FBI report was *favorable* to him and thus that, by having not turned over that report, the government violated its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). *See Walters*, 269 F.3d at 1215–16 (noting that defendant's due-process arguments pertaining to his stolen-gun sentencing enhancement consisted of an explicit *Brady* challenge as well as a fundamental-fairness-based argument that was "in essence, merely re-packaging" a *Brady* challenge). We rejected these arguments on appeal, reasoning in part that the FBI report was actually "*inculpatory* as to the sentencing enhancement for possessing a stolen gun" and thus did not qualify as *Brady* material. *Id.* at 1216 (emphasis added). Significantly, however, the defendant in *Walters* never lodged a due-process challenge to the *reliability* of the withheld FBI report. That is, he did not contend that his stolen-gun sentencing enhancement was established on the basis of insufficiently *reliable* evidence—much less did he make the more specific argument that the government could not properly establish that he had possessed a stolen gun because the FBI report on which this fact was based was not admitted into evidence. Accordingly,

22

*Walters* did not address the question before us today—whether, given the due-process "reliability floor," *Ruby*, 706 F.3d at 1229, a fact may be properly established at sentencing merely through reliance on a law-enforcement report not entered into evidence. It is therefore inapposite to the resolution of this case.

The government next suggests that the relevant facts in the August 6 police report—i.e., Mr. Padilla's alleged possession of 17.38 grams of methamphetamine and a firearm—were in fact corroborated because these facts are "consistent with [Mr. Padilla's] prior incidents" of narcotics trafficking, as charged in his conspiracy indictment, and, therefore, these facts rest on a sufficiently reliable foundation for the court to use them at sentencing. Aplee.'s Resp. Br. at 16; *see id.* at 17 ("[T]he court found that the incident described in the August 6 police report involved a 'similar modus operandi' to Padilla's previous heroin transactions, thus bolstering its reliability . . . ." (quoting R., Vol. II, at 23)). The district court, however, gave no indication that it considered Mr. Padilla's disputed methamphetamine and firearm possession to be corroborated by either of Mr. Padilla's prior incidents of narcotics trafficking. *See* R., Vol. II, at 23–24 (basing its finding as to Mr. Padilla's alleged methamphetamine and firearm possession merely on a determination that the August 6 police report was sufficiently reliable to establish the alleged possession). And significantly, the government did not urge the district court to view Mr. Padilla's prior criminal conduct as corroborative of the statements in the police report.

23

The few observations the district court did make about Mr. Padilla's prior narcotics-trafficking incidents do not alter our analysis. While the court did state that Mr. Padilla's August 6 arrest "involved a similar modus operandi" as did his involvement in the narcotics-trafficking conspiracy (namely based on the fact that similar amounts of methamphetamine were involved in his August 6 arrest and in the two prior heroin transactions undertaken as part of the conspiracy), *id.* at 23, the court made this comment in support of its conclusion that the alleged methamphetamine and firearm possession "were part of the same course of conduct or common scheme or plan" as his heroin-trafficking conviction, *see* U.S.S.G. § 1B1.3(a)(2)—*not*, in other words, in support of its distinct, logically threshold finding that Mr. Padilla in fact possessed 17.38 grams of methamphetamine and a firearm during the August 6 arrest, *see* R., Vol. II, at 23–24. In making that threshold finding, the district court relied solely on the police report that was not admitted into evidence, and, in doing so, it clearly erred.

But, even if the district court had relied on evidence of Mr. Padilla's prior incidents of similar criminal conduct, our caselaw suggests that such evidence—though not irrelevant—does only modest work in bolstering the reliability of evidence of subsequent similar conduct. And here, we conclude that the prior-incidents evidence concerning Mr. Padilla would not, standing alone, have provided strong enough corroboration of the statements in the August 6

police report to put the district court's findings concerning Mr. Padilla's alleged possession of methamphetamine and a firearm (based on the August 6 report) on a sufficiently reliable foundation.

In this regard, *Ruby* is instructive. 706 F.3d 1221. There, we considered the reliability of statements from a police report alleging that the defendant had repeatedly punched his girlfriend. *Id.* at 1228–31. While we stated that it was relevant to our reliability determination as to that police report that the defendant had years earlier pleaded guilty to an assault charge for repeatedly punching the same girlfriend, we said so only after first noting that the police report contained "corroborating statements" from "three relatively neutral witnesses." *Id.* at 1229–30. Moreover, we cautioned against placing too much weight on prior incidents when assessing the reliability of evidence alleging similar subsequent conduct, stating that prior incidents may serve only as "another piece" in a broader reliability inquiry. *Id.* at 1230.

Similarly, in *Martinez*, we noted that the statements contained in police reports concerning the defendant's possession of a firearm that was stolen from a home were consonant with the defendant's long criminal history involving six theft offenses. *See* 824 F.3d at 1262. Accordingly, we concluded, the district court could properly rely on this history to bolster the reliability of the statements in the police reports. *Id.* (citing *Ruby* for its "another piece" language regarding prior incidents involving similar conduct). But, in *Martinez*, unlike here, there

25

was substantial additional corroborative evidence lending credibility to the statements, including the defendant's possession of the stolen firearm and "suspicious actions" in concealing it shortly after the home theft, as well as his inability to "rationally explain how he came to possess the shotgun." *Id.*

Thus, in both *Ruby* and *Martinez*, where the district court's reliance on the challenged statements in sentencing was upheld, there was considerable evidence to corroborate the statements apart from the evidence of the defendants' prior criminal conduct, and it appears that this prior-conduct evidence did modest work in bolstering the reliability of the statements. Here, there is no such additional corroborative evidence. And we cannot conclude that the evidence of Mr. Padilla's prior narcotics trafficking, standing alone, would have been strong enough corroboration of the statements in the August 6 police report so as to place the district court's findings (based solely on that report) concerning Mr. Padilla's possession of methamphetamine and a firearm on a reliable footing.

Lastly, the government—echoing the district court's reasoning—suggests that it is significant that Mr. Padilla had access to the August 6 police report, at least before sentencing. But the government offers no authority to persuade us of the relevance of this fact. The government had a duty to establish—on the basis of sufficiently reliable evidence—that Mr. Padilla had possessed 17.38 grams of methamphetamine and a firearm, *see, e.g.*, *Flonnory*, 630 F.3d at 1285–86, and this remained true irrespective of whether Mr. Padilla himself had ever seen, or

26

reasonably could access, the August 6 police report.  In other words, the mere fact that Mr. Padilla might have been able to access the August 6 police report did not relieve the government of its burden to either offer evidence to corroborate that Mr. Padilla had in fact possessed 17.38 grams of methamphetamine and a firearm, or to enter the August 6 police report into evidence and show that the report was sufficiently reliable—through, for example, its high level of detail and internal consistency—to establish those facts by itself.

***

Police reports are not inherently reliable.  *See, e.g.*, *Jordan*, 742 F.3d at 280; *Ruby*, 706 F.3d at 1230.  Information contained in such reports thus may not be used to establish a disputed sentencing fact unless there is evidence in the record to corroborate that information, or the specific police report in question is in evidence and contains sufficient indicia of reliability to support the probable accuracy of the relevant information.  *See, e.g.*, *Martinez*, 824 F.3d at 1262–63; *Leekins*, 493 F.3d at 150–51.  In overruling Mr. Padilla's objection to the PSR's determination that he possessed the 17.38 grams of methamphetamine and the firearm, the district court did not point to any evidence that might have corroborated those facts, and instead made a finding that the August 6 police report was sufficiently reliable to establish those facts.  But, by making this finding even though the police report had not been entered into evidence, the

27

district court effectively made the mistaken assumption that all police reports are reliable, and thus the court clearly erred. *See Dougan*, 684 F.3d at 1033 n.3.

Put another way, the district court could not properly conclude that a police report bore sufficient indicia of reliability to support the probable accuracy of the information it was being offered to establish without having that report in evidence so that the court could make an on-the-record, individualized reliability assessment, and so that on appeal we could review that assessment. *See id.* It was improper for the district court to find a sentencing fact merely by relying on a police report that had not been entered into evidence. And thus, while "[t]he Sentencing Guidelines do not set a high threshold of reliability, . . . more is required than was presented here." *United States v. Fennell*, 65 F.3d 812, 813–814 (10th Cir. 1995). Moreover, because there is no evidence in the record that might independently and meaningfully support Mr. Padilla's alleged possession of 17.38 grams of methamphetamine and a firearm, we are left with no choice but to reverse the district court's sentencing judgment. *Cf. id.* (stating that a sentencing enhancement is improper, thus warranting reversal, when the only evidence to support that enhancement has not been shown to be sufficiently reliable for use at sentencing).

## III

Having determined that the district court's judgment must be reversed, we now consider the scope of our remand. We agree with Mr. Padilla that the district court should resentence him based on the record *as it now stands*.

"Although a remand for resentencing generally allows the district court to conduct de novo review," *United States v. Forsythe*, 437 F.3d 960, 963 (10th Cir. 2005), we have discretion to limit our remand by way of providing the district court "instructions as [we] consider[] appropriate," 18 U.S.C. § 3742(f)(1); *see, e.g.*, *United States v. Thomas*, 749 F.3d 1302, 1315–16 (10th Cir. 2014); *Forsythe*, 437 F.3d at 963–64; *United States v. Campbell*, 372 F.3d 1179, 1183 (10th Cir. 2004).

We have before exercised this discretion to confine resentencing to the existing record when three factors had been present: (1) "[t]he government bore the burden to prove [a sentencing fact]," (2) "[the defendant] alerted the government to the deficiency in its proof," and (3) "the government made no effort to cure the deficiency in its proof." *Thomas*, 749 F.3d at 1315–16; *see Forsythe*, 437 F.3d at 963 (limiting resentencing to the existing record because "[a]lthough Defendant alerted the government to the deficiency in its evidence, the government did not seek to cure the deficiency" (quoting *Campbell*, 372 F.3d at 1183)). When these factors are present, we may deprive the government of "a second bite at the apple," so that remand "does not invite an open season for the

29

government to make the record that it failed to make in the first instance." *Forsythe*, 437 F.3d at 963–64 (quoting *Campbell*, 372 F.3d at 1183).

We conclude that the three *Thomas* factors are present here. First, the government bore the burden to prove that Mr. Padilla possessed 17.38 grams of methamphetamine and a firearm during his August 6 arrest. *See, e.g., Aragon*, 922 F.3d at 1108; *Foy*, 641 F.3d at 470; *Campbell*, 372 F.3d at 1183 ("Under well-established Tenth Circuit precedent, the government has the burden of proving sentence enhancements and increases." (quoting *Keifer*, 198 F.3d at 800)).

Second, Mr. Padilla alerted the government—both in his written objection to the PSR and at the sentencing hearing—that its proof as to the methamphetamine and the firearm was deficient. *See* R., Vol. I, at 117 ("There is no indication that the United States has reviewed this evidence [regarding the methamphetamine and firearm], as it was not provided in discovery . . . ."); R., Vol. II, at 18 (stating that "none of th[e] evidence" relating to the methamphetamine and the firearm "was brought into this case"); *cf. Thomas*, 749 F.3d at 1315 (concluding that the defendant alerted the government to its deficient evidence regarding prior convictions mentioned in the PSR simply by "demand[ing] proof" of those convictions); *Campbell*, 372 F.3d at 1183 & n.3 (holding that the defendant properly alerted the government to its deficient sentencing evidence even though defendant did not do so until his sentencing

30

hearing; "the government could have sought a continuance at that point and failed to do so").

Finally, it is undisputed that, even if partially due to "inadvertent[] . . . oversight,"[6] Aplee.'s Resp. Br. at 20, the government at no time made an effort to introduce into evidence the August 6 police report or anything else to corroborate Mr. Padilla's alleged possession of 17.38 grams of methamphetamine and a firearm.

Because the *Thomas* factors apply here, we "decline to give the government a second opportunity to make the record that it failed to make the first time." *Thomas*, 749 F.3d at 1316. Therefore, on remand, the district court must resentence Mr. Padilla based on the existing record.

---

[6] Our conclusion that the *Thomas* factors apply here does *not* rest on a determination that the government acted in bad faith or otherwise engaged in misconduct. While in *Campbell* we limited our remand to the existing record after noting that the government, once it was alerted to the deficiency in its sentencing evidence, "made patently erroneous legal arguments as to why such proof was not needed," that statement was seemingly made to emphasize that "the government did not seek to cure the deficiency." 372 F.3d at 1183; *see id.* ("[T]he government did not seek to cure the deficiency, and *instead* made patently erroneous legal arguments as to why such proof was not needed." (emphasis added)). Moreover, we did not suggest in either *Forsythe* or *Thomas*—each of which applied *Campbell*'s reasoning—that our decision in those cases to limit resentencing to the existing record was driven by an assessment that the government had acted deceptively or otherwise in bad faith. *See Thomas*, 749 F.3d at 1315–16; *Forsythe*, 437 F.3d at 963–64.

31

## IV

Because we conclude that the district court clearly erred in finding sentencing facts by merely relying on a police report that was not in evidence, we **REVERSE** the district court's sentencing judgment and **REMAND** the case for resentencing. Moreover, because Mr. Padilla made the government aware of the deficiency in its sentencing evidence, and yet the government made no effort to cure that deficiency, we limit our remand such that the district court must resentence Mr. Padilla based on the record as it now stands.

ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge