**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1551
_____

UNITED STATES OF AMERICA

v.

CHRISTOPHER COLLARE,
Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-20-cr-00017-001)
District Judge: Honorable Jennifer P. Wilson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 26, 2023

Before: HARDIMAN, KRAUSE, and MATEY, *Circuit Judges*.

(Filed: March 15, 2023)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**HARDIMAN**, *Circuit Judge.*

Christopher Collare appeals his 75-month sentence for bribery, distribution of heroin, and making false statements. We will affirm.

I

While serving as a police officer from 2012–2018, Collare abused his position by soliciting sexual favors, distributing drugs, and falsifying information on police records to cover up his crimes. Collare recruited confidential informants, often women under criminal investigation, to conduct controlled drug purchases to help Collare with narcotics investigations. These informants testified at trial that Collare permitted them to keep drugs they obtained from controlled buys, and that he offered them drugs, money, and other favors in exchange for sex. Collare challenges the trial testimony of two of those informants: Romaine Stansfield and Tiffany Newberry.

Stansfield testified that she met Collare in 2012, and that she viewed him as a father figure. In 2018, Collare began using Stansfield as a confidential informant. One day, after an altercation with her spouse, Stansfield reached out to Collare for help because he was "a good friend." App. 285. Collare drove her to a park where they walked around; Stansfield was "shaking" and "really upset." App. 286–87. Stansfield testified that Collare raped her at the park.

Collare recruited Newberry as a confidential informant in 2012 by telling her that he knew she had been selling heroin. Newberry performed two controlled drug buys for Collare. At trial, Newberry testified that she could not recall engaging in any sexual act with Collare, though she did remember testifying before the grand jury. The District

Court permitted the prosecutor to read a portion of Newberry's grand jury testimony into the record as a recorded recollection under Rule 803(5) of the Federal Rules of Evidence. Newberry had testified that she performed oral sex on Collare in exchange for money to buy heroin at least two or three times.

A jury convicted Collare of: one count of federal-program bribery in violation of 18 U.S.C. § 666; one count of bribery in violation of 18 U.S.C. § 201; one count of distribution of heroin in violation of 21 U.S.C. § 841(a); and six counts of making a false statement in violation of 18 U.S.C. § 1001.

The Presentence Investigation Report (PSR) recommended an advisory sentencing range of 51–63 months under the United States Sentencing Guidelines (U.S.S.G.). As relevant on appeal, the PSR recommended sentencing enhancements for Collare's position as a public official in a high-level decision-making or sensitive position (U.S.S.G. § 2C1.1(b)(3)) and Collare's abuse of a position of trust (U.S.S.G. § 3B1.3). The District Court adopted those enhancements, rejected others, and calculated Collare's Guidelines range as 41–51 months.

At sentencing, the Government requested an upward variance, seeking a sentence of at least 60 months based on two aggravating factors: the longevity of Collare's conduct and his exploitation of vulnerable individuals. The District Court found that each factor warranted a 12-month upward variance and imposed a 75-month sentence. Collare timely appealed.

II[1]

Collare raises three issues on appeal: one challenge to the District Court's upward variance based on the longevity of his conduct and two challenges to the Court's upward variance based on his exploitation of vulnerable individuals.

A

Collare first claims the District Court engaged in improper double counting by basing two Guidelines enhancements and an upward variance on his abuse of his position as a police officer.[2] This argument fails because "a sentencing court is not prohibited from considering the factual basis underlying a defendant's sentence enhancements" in fashioning an appropriate sentence under 18 U.S.C. § 3553(a). *United States v. Greenidge*, 495 F.3d 85, 103 (3d Cir. 2007). In fact, the court "*should* consider those facts in order to tailor the sentence to the defendant's individual circumstances." *Id.* The District Court did just that.

The Court explained that Collare's six-year scheme—during which he "abused his position as a drug task force officer to engage in criminal and inappropriate acts for several years"—had a deleterious "impact on public confidence and the integrity of

---

[1] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[2] Contrary to the Government's claim that Collare forfeited this argument, Collare argued at his sentencing hearing that the Government was seeking "an upward variance . . . [for] reasons that are already accounted for in the guidelines," namely, enhancements for his "position of public trust" and "the sensitive nature of his position." App. 627. Collare therefore preserved his double counting argument, and we review for abuse of discretion. *United States v. Brito*, 979 F.3d 185, 189 (3d Cir. 2020).

criminal investigations" warranting an upward variance. App. 639–40. Though Collare's conduct justified application of the sensitive-position and abuse-of-trust Guidelines enhancements, that did not preclude the Court from considering that same conduct under the § 3553(a) factors as well. So the Court did not abuse its discretion by finding that a within-Guidelines sentence was "simply not adequate" given the longevity and severity of Collare's abuse of his position. App. 640.

B

Collare next argues that the District Court erred by imposing an upward variance for "preying on and exploiting vulnerable community members." App. 640. He claims first that the District Court relied on clearly erroneous testimony and second that the vulnerable community members were not true victims of his crimes.

1

Collare contends that Stansfield's and Newberry's testimony was "clearly false and uncredible." Collare Br. 18. "Information used as a basis for sentencing must have 'sufficient indicia of reliability to support its probable accuracy.'" *United States v. Givan*, 320 F.3d 452, 463 (3d Cir. 2003) (quoting U.S.S.G. § 6A1.3(a)).

Collare claims Stansfield's testimony was discredited by a post-trial email from a Pennsylvania State Police officer describing her rape allegation as "quickly unraveling" and "clearly . . . false." PSR Addendum at 10. But the officer made that statement about a *different* rape allegation by Stansfield in a separate case, unrelated to Collare. *See id.* Though the officer also stated that his source told him the allegation against Collare was false, the officer explained that he "didn't get into the details" of Stansfield's relationship

5

with Collare and noted that his source "ha[d] an axe to grind" with Stansfield (yet he still believed the source was "honest"). *Id.* The District Court did not clearly err to the extent it credited Stansfield's sworn trial testimony that Collare raped her instead of the equivocal post-trial email. *See United States v. Leekins*, 493 F.3d 143, 150 (3d Cir. 2007) ("We give great deference to a presiding judge's credibility determinations . . . .").

Collare further argues that the District Court erred by considering Newberry's grand jury testimony, which was read to the jury as a recorded recollection, because he was unable to test Newberry's credibility through cross-examination. But Collare does not contest the admission of the testimony itself, and Collare did cross-examine Newberry at trial about her inability to remember the *quid pro quo*. The District Court was entitled to credit Newberry's grand jury testimony, particularly given her averment at trial that she had no reason to believe her grand jury testimony was untruthful. *See id.*

In sum, to the extent the Court relied upon Stansfield's and Newberry's testimony for its upward variance, it did not clearly err.

2

Collare finally claims the District Court erred by increasing his sentence based on his exploitation of vulnerable women because they were "willing participant[s]" in his criminal activity, rather than victims. Collare Br. 19. Collare contends that the true victims of his bribery, drug, and false statement crimes were "society at large" and "the federal government." Collare Br. 19–20. This argument is tenuous at best.

That the women Collare exploited were not technically victims of his crimes did not preclude the District Court from considering the harm Collare inflicted upon them.

6

District courts may consider a broad range of information when sentencing a defendant. *See* 18 U.S.C. § 3661; *Concepcion v. United States*, 142 S. Ct. 2389, 2398 (2022). And here, the Court explained that the harm to these women was not captured by the advisory Guidelines range because the vulnerable victim enhancement of U.S.S.G. § 3A1.1 did not apply "as a technical matter." App. 640. Collare's exploitation of these women was an appropriate consideration under § 3553(a) as part of the nature and circumstances of his offense, and the need for his sentence to reflect the seriousness of his offense and provide just punishment. His attempt to characterize the women he bribed as willing participants in his crimes ignores reality—Collare selfishly used his powerful position to exploit women struggling with drug addiction. The upward variance was well within the Court's discretion.

\*　　\*　　\*

For the reasons stated, we will affirm the District Court's judgment of sentence.

7